## BERTOLINA et al. v. FRATES et al.

No. 5562.   Decided April 30, 1936.   (57 P. [2d] 346).

*William Reger*, of Salt Lake City, for appellants.

*Ingebretsen, Ray, Rawlins & Christensen*, of Salt Lake City, for respondents.

BATES, District Judge.

This action was brought by plaintiffs to quiet title to a tract of ground owned by them in Salt Lake county, Utah.

For the purpose of illustrating the comments made in this opinion, a plat of the area immediately surrounding plaintiffs' land follows:

To plaintiffs' complaint the defendants, Albert Frates, Lyman-Callister Company, Walker Bros., Bankers, and Lester F. North have answered. Melinda H. Butterworth, Henry B. Williams, and Mercy Williams, his wife, and Phenoy Charles Donelson, and Frank Frates were named as defendants. It will be observed by an examination of the foregoing plat that each of them owns lands in the vicinity

of plaintiffs' tract and abutting upon a strip of ground over which the answering defendants claim to have an easement for travel. These defendants did not answer. Their defaults were entered, and after proofs taken, judgments were entered quieting title to plaintiffs in their tract of ground and decreeing that said defendants have no right or interest therein.

The defendants Walker Bros., Bankers, disclaim any interest in plaintiffs' property, but allege that they are guardians of the defendant Lester F. North; that he is the owner of property abutting upon the right of way; and that the real estate described in plaintiffs' complaint is subject to an existing and established right of way over the northerly one rod thereof, which said right of way has been used openly and peaceably and under claim of right adversely to plaintiffs for a period in excess of twenty years prior to the institution of plaintiffs' suit.

The defendant Lyman-Callister Company alleges that said real estate is subject to an existing and established right of way as hereinafter more particularly described, which said right of way has been used openly and peaceably and under claim of right adverse to said plaintiffs for a period in excess of twenty years prior to the institution of plaintiff's suit herein. That running west from what is known as 3970 Highland drive in Salt Lake county, Utah, is a lane and highway which traverses the northerly one rod of the property described in plaintiffs' amended complaint; that said defendant has an interest in property along and upon said right of way; and that said right of way over the northerly one rod of the property described in plaintiffs' amended complaint has been used by this defendant and by numerous other owners having property abutting thereon for a period in excess of twenty years prior thereto. That said right of way has been used openly, adversely, and under claim of right and has become, by virtue of such use, a legally established right of way.

The defendants, Albert Frates and Marian Frates, his wife, in their answer allege that the real estate is subject to an existing and established right of way as hereinafter more particularly described, which said right of way has been used openly and peaceably and under claim of right, adversely to said plaintiffs for a period in excess of twenty years prior to the institution of plaintiffs' suit herein; that the defendants are in possession of certain property (the description follows) ; that there is appurtenant to said property a lane and right of way running west from 3970 Highland drive in Salt Lake City, which said lane, in so far as it affects the property described in plaintiffs' complaint, constitutes the northerly one rod thereof; that the said right of way over the northerly one rod of the property described in plaintiffs' complaint has been used by these defendants and by numerous other owners having property abutting thereon for a period in excess of twenty years prior hereto; and that said right of way, by virtue of said user, has become a legally established right of way.

The claimed right of way referred to in the pleadings is a strip of ground running east and west from (x) to (y) between the heavy black lines on the foregoing plat. Plaintiffs' property is at the intersection of the alleged lane and Fifteenth East street and extends to the north boundary of the lane.

The property claimed by the defendants Albert Frates and wife is on the south side of the lane and immediately to the east of plaintiffs' tract. The property of the defendant Lyman-Callister Company is also on the south side of the lane and joins the tract owned by defendant Albert Frates on the east. The land owned by the defendant Lester F. North is on the north side of the claimed lane and abuts on Highland drive. The plat portrays the relative position of the respective tracts of land owned by those defendants who were defaulted. It will be observed from a perusal of the respective answers that each of the answering defendants claims to have an easement or right of way over the north

one rod of plaintiffs' land and that the right of way was acquired by prescription. Upon that issue the case was tried, determined, and appealed to this court.

The assignments of error are, in general, that the evidence is insufficient to justify the findings of a right of way across plaintiffs' land in favor of any of the answering defendants. There is a mass of evidence in the record tending to establish that numerous people besides the defendants have traveled as occasion required over the alleged right of way, but that evidence is immaterial in this case. Where a person claims to have acquired an easement by prescription over another's land, he must show that he has acquired it by his own continuous, open, uninterrupted, and adverse user under claim of right for the twenty-year prescriptive period. The prescriptive right is based originally upon the theory of a grant implied from long user. *Funk* v. *Anderson*, 22 Utah 238, 61 P. 1006. It runs to the individual and not to the public. Mr. Washburn, in his work on Easements (4th Ed.) § 43, p. 164, says:

"But one can not claim a right of way as a private one by showing that it had been used by the proprietors of other lots than his own. He must show a user by himself or his predecessors of the way to his own lot under a claim of right for the requisite period of time, continuously, by the acquiescence of the owner of the land over which it lies."

Everywhere in the books the statement upon the creation of a prescriptive right is: That it must be adverse, not by license or favor, under claim or assertion of right, hostile to the right of the owner so as to expose the claimant to an action of trespass if his claim is not well founded. A user by an undividual which is not distinguished from that of the public will be considered permissive and not adverse unless there is evidence that it was under a claim of right in himself and that the owner knowing of such claim acquiesced in it. Authorities should be unnecessary to demonstrate that principle. The mere state-

ment of the conditions under which the prescriptive right may be acquired negatives the idea of user by others either adding to or detracting from the rights of a particular claimant.

Walker Bros., Bankers, on their own part disclaim any interest. It necessarily follows that judgment awarding them a right of way across plaintiffs' land is error and must be reversed for the reason that they claim no right of way, and for the further reason that there is no evidence to support such a judgment. Such judgment was, no doubt, inadvertently rendered; but that does not lessen the evil consequences that might well follow if such judgment were affirmed.

There is no evidence in the record from which the court could reasonably draw the conclusion that Lester F. North had used the claimed right of way for the prescriptive period. One witness for the defendants, with reference to that question, testified as follows:

"Q. Now to what extent has Lester North used that way from the Bertolina property, if you know? A. Lester North has no farm implements. If he uses it, he walks.
"Q. So his use, if he used it, would be walking? A. Yes, sir.
"By the Court: Would be what?
"The Witness: Walking. He hasn't any farm implements."

Another witness called by the defendants, after having testified generally that people living along this right of way on both sides used the right of way and used it regularly and daily, every day and every week in the year, was asked:

"Q. Does Lester North use that road? A. Yes, Lester North uses it."

No other evidence is called to our attention, and we have discovered no other evidence, bearing on this question in the record. This evidence respondent claims is sufficient to support the court's conclusions that this defendant had used the right of way openly, adversely, continuously, and under claim of right for a period in

excess of twenty years. Such contention cannot be upheld. For aught that appears in the testimony, the user may have been only a month or only a year. It may have been without the knowledge of the plaintiffs or with their express consent or in any number of ways other than the way required by law to establish a right of way by prescription. It follows that with reference to this defendant the judgment must be reversed.

With reference to the rights of the defendants Albert Frates and Marian Frates, his wife, and Lyman-Callister Company, the record shows the following facts: Patent to the lands owned by plaintiffs and defendants was issued to Charles A. North in 1875. The patentee conveyed to Arraminta North in 1893. There is no claim made, and the record does not justify such a claim, that a right of way by prescription had been acquired at that time. Neither could it have been acquired because the tracts of land owned by these defendants and plaintiffs were owned by the same person. Unity of possession and ownership prevents the acquisition of a prescriptive right. As the books say: A man cannot prescribe against himself.

In 1896 Arraminta North conveyed the tract now owned by plaintiffs to Charles A. North and thereafter, through mesne conveyances, title passed to Hyrum K. North in 1909. The deed executed by Arraminta North to Charles A. North in 1896 contained the provision: "Subject to a farm road across the north side." In subsequent conveyances of that tract of ground that limitation does not appear. When Arraminta North conveyed the ground now owned by plaintiff in 1896, she was then the owner of the tracts now owned by the defendants Albert Frates and wife and Lyman-Callister Company. In 1897 she conveyed to Clarence North the tract now owned by defendants Albert Frates and wife. On the same day she conveyed the tract now owned by Lyman-Callister Company to Arraminta Fuller. Each of these conveyances was, "subject to a permanent right of way for a farm road across the north side." The title to

these tracts in 1910 by mesne conveyances passed to Hyrum K. North. Hyrum K. North was the owner of the tract of land now owned by plaintiff and the tracts of land now owned by defendants Albert Frates and wife and Lyman-Callister Company from 1910 to 1919. It thus appears from the evidence that there was a unity of title and possession of the tracts owned by plaintiffs and these defendants down to the year 1896 and again from 1910 to 1919. There is no period in the history of the title to these tracts when the prescriptive right could have been acquired. Unity of possession and ownership, as heretofore indicated, defeats the running of the prescriptive period.

"An owner of land can not have an easement in his own estate in fee, for the plain and obvious reason that in having the jus disponendi—the full and unlimited right and power to make any and every possible use of the land—all subordinate and inferior derivative rights are necessarily merged and lost in the higher right. * * * Accordingly when the owner of an estate enjoys an easement over another estate and acquires title to the latter the easement is thereby extinguished." 19 C. J. 945, § 156.

In view of the foregoing legal principles, it is apparent that a prescriptive right could not have run because of unity of title in the various tracts down to the year 1896 and thereafter from the year 1910 to the year 1919. Counsel for respondents recognize this rule but seem to be of the opinion that it is not controlling in this case. In their brief they say:

"We do not dispute the general rule that an owner of land cannot have an easement in his own estate in fee. * * * What appellants lose sight of is that there are well recognized exceptions to this general rule and one of those exceptions arises in this case of rights of way of necessity, or as they are sometimes differently entitled, a grant by implication."

In support of this proposition they quote 19 C. J. 946, § 157:

"An exception to the general rule arises in the case of a way of necessity. Where there is a unity of ownership a previous right of

way which came into existence by necessity is merely in suspension, and not extinguished."

In support of the proposition that, "It is the necessity obtaining at the time of the conveyance which determines the existence of the right," they quote 2 Tiffany (2d Ed.) 1303:

"Since a way of necessity exists by reason of a construction of the conveyance, based on the necessity of such way to the user of the land conveyed or retained, it is the necessity which exists at the time of the conveyance which determines the existence of the way and not a necessity which may subsequently arise."

The difficulty with these principles of law, as applied to the case now under consideration, is that the case was neither pleaded, tried, ruled, nor appealed on the theory of there being a way of necessity. The whole case as made in the trial court was based on the theory that a right had been acquired by prescription. So far as the record discloses, no suggestion of a way of necessity was made by any one until the brief of the respondents was filed in this court. Even if we were to look upon it as being an exception to the prescriptive rule of twenty years' continuous, uninterrupted, adverse user, still it does not change the situation. As pointed out by Mr. Justice Frick in *Farr* v. *Wheelwright Construction Co.*, 49 Utah 274, 163 P. 256, 257:

"It should require no argument, however, to show that where one claims an easement over real property he should set forth his claim in apt terms in his pleading."

To uphold the judgment of the trial court on the theory that one or more of the defendants have an easement in the nature of a "way of necessity," in a case tried entirely upon the theory of a way acquired by prescription, would be to deprive the appellants of an opportunity to be heard in court upon the theory claimed by respondents to give them a right of way. But the fact that a way

of necessity exists, if it does, is not an exception to the prescriptive rule. The rule is well stated in 19 C. J. 947, § 161:

"Ordinarily after a merger by the unity of title to the dominant and servient estates the owner grants the former dominant estate to another, it passes without the former incidents unless they are revived by force of the grant itself, by such words of description as could bring them into being by way of new grant; and conversely if he conveys the servient tenement there is no revival of the easement unless there is an express reservation in his favor. But although the old easement is not revived by the severance, yet a new easement may be granted by implication, if it is apparent, continuous, and necessary, upon the same principle and under the same circumstances that easements are granted by implication upon the severance of an estate originally entire."

Ways of necessity arise by virtue of conditions entirely different from ways created by prescription. A prescriptive right can be acquired by any one. It may be appurtenant or in gross. There need be no connection ■ so far as the chain of title is concerned between servient and dominant estates, but ways of necessity exist only where the titles spring from a common source.

"Whatever the necessities of the parties may be, a private way of necessity, as that term was defined at common law, does not apply to a way over the land of another, unless there be a dominant and servient estate. There can be no private way of necessity over the lands of a stranger. The right to use the way as a private way of necessity finds its support in the doctrine of estoppel, and is usually, if not universally, applied where a grantor, immediate or common, has sold land which would, unless connected in some way with the established highways of the country, be useless to the grantee. Hence an intention to grant an easement is implied." *Schulenbarger* v. *Johnstone*, 64 Wash. 202, 116 P. 843, 844, 35 L. R. A. (N. S.) 941.

"Ways of necessity cannot be founded on an express grant. They are, however, except in so far as the rule has been changed by statutory provision, dependent upon an implied grant or reservation, and cannot exist where there was never any unity of ownership of the alleged dominant and servient estates, for no one can have a way of necessity over the land of a stranger." 19 C. J. 921, § 114.

There is no such relation between the two methods of acquiring the right to the use of another's lands as to justify

the court in upholding a judgment based on the prescriptive theory by the application of the principles of law which determine the existence of ways of necessity. Counsel for respondents earnestly urge a way of necessity exists in favor of defendants as a method of egress and ingress to Fifteenth East street, but in view of the conclusions we have arrived at, it is unnecessary to determine that question at this time.

A comment or two upon the state of the record and the claims of respondents with reference thereto will serve to illustrate, however, the justice of our conclusion that appellants have not had their day in court with reference to the theory upon which we are now asked to determine this case and that the evidence that may be controlling under that theory may not be before the court. Respondents say there is a "way of necessity" across appellants' land because:

"It must be borne in mind in this case that if Bertolina can close off the westerly end of the right of way, Williams can close off the entrance on the east. In other words, no particular part of this right of way is any different or any better than any other part, and if the appellants should succeed in establishing their contention every person along the right of way except those having frontage on the streets at the extremities could be shut off and bottled up."

So far as the evidence now before the court is concerned, that statement may be true; but whether it would be if the case had been tried on that theory cannot be determined. For instance, the abstracts of title showing the grants of the real estate from the Lyman-Callister property to Fifteenth East street on the west are in the record, and the court can determine the right of way reservations that are in existence, if any. No such evidence is in the record with reference to the tracts to the east and extending to Highland drive. The evidence does show that the parties owning lands on the respective sides of the lane and abutting on Highland drive have so fenced their tracts as to leave an open lane. Just what the conditions are through the Butterworth property is not determined. Whether the reservation made by Arraminta North in the deeds to Arraminta Fuller

and to Mrs. Butterworth have continued throughout the record of the title, or whether other things have been done by way of creating express or implied easements, cannot be determined from this record. It may be, for all we can tell from the record before us, that all of the defendants have ways of ingress and egress which make their respective tracts accessible to the public highways. Whether the necessity to go directly to Fifteenth East street is of such importance to Mr. Frates and Lyman-Callister Company as to materially enhance the value and usability of their respective tracts cannot be determined and ought not be determined where the issues have not been presented to the trial court by proper pleadings and such evidence as the parties may desire to offer.

It is also urged by respondents that the decision of the trial court should be upheld because:

"The thoroughfare has been dedicated and abandoned to the public and is a public highway."

This question, like the question of the way of necessity, was not the theory upon which the case was pleaded, tried, ruled, and appealed. Counsel for respondents in drawing the findings demonstrated that even that late they had no thought in their minds of having made a case under the theory of a way of necessity or of a public highway, but prepared findings and decree based entirely upon the theory of a right of way acquired by prescription.

Much evidence of use by numerous people was offered and admitted into the record and the court of its own motion inserted in the findings the following language: "by defendants and the public generally." But the decree of the court established only that plaintiffs' land was subject to an easement in favor of the defendants. The public was not a party to the litigation. There is nothing to indicate in the pleadings or in the findings any dedication to the use of the public or any grant to the public. Such right, if established,

would conflict with the prescriptive right pleaded by defendants.

"Except in some jurisdictions, it has very generally been held that as the owner of land over which a public highway runs cannot prevent the use of such highway by the public, it follows that a private right of way cannot be acquired by prescription over land used as a highway, as against the owner of the fee. But after the discontinuance of a public highway a private right of way may be acquired by prescription over the same route." 19 C. J. 900, § 78.

"The right to an easement will be extinguished by a lawful appropriation to a public use of the land where the easement is located, or of other land which will render the enjoyment of the easement impossible." 19 C. J. 957, § 178.

In *Thornley L. & L. Co.* v. *Morgan Bros. L. & L. Co.*, 81 Utah 317, 17 P. (2d) 826, 827, this court says:

"The judgment is defended upon the grounds that the proof amply established the existence of a public road—citing *Lindsay L. & L. S. Co.* v. *Churnos*, 75 Utah 384, 285 P. 646. But such a right was not alleged in the complaint, nor decreed by the court. A decree establishing a private or individual right to a way is different in consequence and legal effect from a decree establishing a public way.

"Had the action been for the purpose of judicially establishing a public road and restraining interference with the plaintiff's use thereof, a decree accordingly might well have been sustained by the evidence produced. But we have no such case. For the reasons stated, the evidence fails to establish an individual or private right in the plaintiff, and the decree cannot stand."

From what has been said, it follows that we are not at liberty to uphold the judgment in favor of the defendants Albert Frates and Marian Frates, his wife, and Lyman-Callister Company in this case on the theory of there being a public highway or a way of necessity or a grant by implication over plaintiffs' land, and that defendants are not entitled to have the judgment upheld upon the theory of their having a prescriptive right because the evidence not only fails to show the acquisition, but affirmatively shows that such right has not been acquired.

The judgment of the lower court is reversed, and the cause remanded, with directions to grant a new trial with per-

mission to amend the pleadings if the parties desire. Costs to appellants.

ELIAS HANSEN, C. J., and FOLLAND and EPHRAIM HANSON, JJ. concur.

WOLFE, Justice (concurring).

After some doubt, I am compelled to concur in the results of the court's opinion. A close examination of the record as it stands and the law of the case rather convinces me that the defendants Frates and Lyman-Callister Company under the proper pleadings could have shown a right of way by implied grant, but not by prescription. All of the property on the south side of the lane on the diagram between Fifteenth East street and Highland drive was from 1875 up to February 13, 1896, owned by Arraminta North and her father in reverse order named. The plaintiffs' lot on the west end of the lane and the lots of the two defendants above named are all carved out of this original tract. During such time no prescriptive rights could have been initiated by the predecessors of those defendants because Arraminta North and her father, although predecessors of both plaintiffs and defendants, could not initiate for future grantees a prescriptive right in their own land. Therefore, before February 13, 1896, when Mrs. North conveyed the portion now owned by the plaintiffs, there was no right initiated and the process of tacking could not have started in favor of these two defendants on plaintiffs' lot. From January 7, 1909, to June 28, 1919, Hyrum K. North owned both the lot now owned by plaintiffs and the lots now owned by the two above-named defendants. During this period there could have been no tacking and no prescriptive rights in favor of the Frates and Lyman-Callister lots against the plaintiffs' lot. Between February 13, 1896, and January 7, 1909, a period of nearly thirteen years, there could have been running in favor of the two lots and against the plaintiffs' lot time wherein a prescriptive right to an easement might have been maturing. And from June 28, 1919, to

September 30, 1932 (the date when the answer was filed), a period of more than thirteen years, when the lots were in the hands of different owners, prescriptive rights could again have been initiated and maturing in favor of these defendants against the plaintiffs and their predecessors in interest. But neither period was twenty years long and the common ownership of Hyrum K. North broke the continuity of the total period. See 19 C. J. 894, 895, § 68. This eliminates the possibility of private right by prescription as appurtenant to land. As no right in gross is claimed for any of the defendants, that is also eliminated from consideration. A right in the defendants as constituents of the public is claimed, but neither the pleadings nor the proof uphold that. The pleadings will be considered in a moment.

As to the proof, there was evidence that neighbors and abutting owners, servitors and guests, used the lane, but no such evidence from which it could be said that there was such a use by the public generally as to imply a dedication. The fact that the county hauled gravel on the lane and deposited it two years before the suit would be some evidence, but without the assistance of a continued user by the public generally for ten years there could be no implied dedication or abandonment. Because property owners permit neighbors and visitors to cross their property, even over a number of years, is no indication of an intent to dedicate or abandon such traversed strip to the public. It is well at this point to note that a number of apparently reliable witnesses familiar with the strip in question for many years testified to the fact that the portion of the so-called lane north of what is now the Bertolina place was for a long time occupied partly by a slough, and that the willow trees grew out from a ditch on the north side so thick that one was compelled to divert to the south in order to get around them. There was also evidence that Hyrum K. North cultivated as far up to the willows and the north line of his property as possible. These witnesses stated they remembered as children that there was going through there the nearest trail which people

used sometimes as a walk to get to Fifteenth East and that it was used by school children going to and from school; that it would be impossible for wagons to get through without bogging during certain times of the year; and that the weeds and willows were an impediment. There was testimony as to a wire fence having been across there at one time. These witnesses were almost unanimous to the effect that there was no well-defined roadway through there until Frank Frates built a house on what is now the Albert Frates tract six or seven years before this suit. True, there was contrary evidence sufficient, if the period had not been interrupted, to support a finding of continued adverse, private use, but not of a use by the public generally. In the case of *Schettler* v. *Lynch*, 23 Utah 305, 64 P. 955, there was evidence of a use of the twelve-foot strip by the public, a fence erected by the owner of the abutting property setting off the strip, and the building of homes in recognition of it, all of which the owner knew about and his own designation of it as a street by placing a sign thereon. Such conduct manifested the necessary animus dedicandi; at least, worked an estoppel against him. In the case of *Culmer* v. *Salt Lake City*, 27 Utah 252, 75 P. 620, 622, the court said:

"The evidence is undisputed that the use of the alley has been practically confined to parties who owned or occupied property within that portion of block 70 of Salt Lake City Survey which lies west of Commercial street, and through which the alley passes. * * * And while others owning property in that neighborhood may have used the alley under circumstances and to such an extent as to create an easement therein, which, however, is a question not involved herein, and not necessary for us to decide, *yet it is plain that the limited uses made of the alleyway, when considered in connection with the conduct and acts of plaintiffs in relation thereto, were not such as would warrant or justify a belief that they intended to throw it open as a public highway.*" (Italics supplied.)

The italicized portion seems to be quite applicable to the case at bar. See, also, *Morris* v. *Blunt*, 49 Utah 243, 161 P. 1127. Moreover, the answer does not raise the issue of a

right of the defendants as part of the public to use this lane. Nor does it raise the issue of a way by necessity or by implied grant. The answer of Walker Bros., Bankers (to be considered as an answer of Lester North, since Walker Bros. disclaimed except as his guardian and was so treated in the suit), simply set up that the "real estate described in the plaintiffs' complaint is subject to an existing and established right of way over the northerly one rod thereof, *which said right of way has been used openly and peaceably under claim of right adversely to the plaintiffs for a period in excess of twenty years prior to the institution of plaintiff's suit herein.*" (Italics supplied.) If we consider the italicized portion merely descriptive of the nature and extent and period which the alleged established right of way was used and not as a limitation on the manner in which it was acquired, to wit, by prescription, and therefore surplusage, and we further consider the remaining unitalicized portion as a sufficient allegation of the nature of the right or estate claimed in the one rod which, in the absence of a motion to make more definite would withstand a general demurrer (a doubtful assumption in view of *Larsen* v. *Onesite,* 21 Utah 38, 59 P. 234), we have a pleading as far as Lester North is concerned under which a way of necessity or a grant by implication or a right as one of the public could be shown. But a glance at the plat set out in the court's opinion shows that the North property abuts on Highland drive, so he cannot claim a way by necessity. His tract was not part of the land owned by Arraminta North, so he cannot claim that in her division there was a way implied as might the few lots on the south side of the lane, and, as stated before, the evidence does not sustain a finding that the way was dedicated to and accepted by the public. As to his gaining a right by prescription the evidence does not sustain a finding that he or his predecessors used it for *twenty years or more.* The evidence merely is that Lester North used the north strip of what is now the Bertolina property. For what purposes, in what manner, whether by foot, horseback, or vehicle, or how

long or how frequently, does not appear. He might have used it just once under the evidence.

When the pleadings of the defendants Frates and Lyman-Callister Company are taken into account, we have a very much more definite limitation as to the manner in which that right was denied. The answers of both these defendants set out in the denial part what has been above quoted from Lester North's answer, and then in their "further and affirmative defense" state:

"That said right of way over the northerly one rod of the property described in the plaintiffs' complaint has been used by these defendants and by numerous other *owners having property abutting thereon* for a period in excess of twenty years prior hereto, and that said right of way *by virtue of said user* has become a legally established right of way." (Italics supplied).

By this allegation these defendants definitely limited themselves to a right not as members of the public, but as abutting owners, and, further, to a right arising by prescription rather than arising by necessity or by implied grant. Because I believe that the deeds given by Arraminta North, each containing the provision that the deeded land was "subject to a permanent right of way for a farm road across the north side" together with the situation of these five lots in respect to each other, may make a basis for an implied grant of an easement running with each of these lots which was not extinguished, even as to three of those lots, by their unity of title in Hyrum K. North, I have carefully considered the pleadings. I cannot conclude differently than is concluded by the court's opinion that the pleadings are not sufficient to permit evidence or a finding of implied grant of a way by necessity or public right of way. I can readily see that if Bertolina can close up the west end of the lane, by the same token Williams at the east end may be able to close up that portion and thus bottle up Albert Frates, Lyman-Callister Company, and Melinda Butterworth. In fact, any two of these five owners on both sides of a third owner can bottle up such third owner if there is no way by necessity

or grant by implication of the lane. Certainly, Arraminta North attempted to guard against this very situation, and when she divided up her land into five lots among her children, she by those deeds created a right of way in favor of all over the north end of the lot of each. This easement ran with the land whether subsequent deeds contained the provision or not. Yet, I cannot see how under the pleadings it can be shown. The defendants may be comforted by the fact that in subsequent suits this attempt to cut off their right of way to the east may be guarded against. As stated before, defendants have had no continuous period of adverse user for twenty years, even though we give them the benefit, as against quite definite and seemingly reliable conflicting evidence, of the finding implied by the lower court in its findings of fact that they and their predecessors actually used the one rod north strip of Bertolina's land for many years, in the aggregate more than twenty.

For the above reasons, I concur in the court's opinion.

MOFFAT, J., being disqualified, did not participate herein.