## IN THE COURT OF APPEALS OF TENNESSEE,
## AT JACKSON

_____

|  |  |  |
|---|---|---|
| **CLYDE BINGHAM, JR. and wife,** | ) | Henderson County Chancery Court |
| **BETTY BINGHAM,** | ) | No. 11281 |
|  | ) |  |
| Plaintiffs/Appellees. | ) |  |
|  | ) |  |
| VS. | ) | C.A. No. 02A01-9803-CH-00083 |
|  | ) |  |
| **JAMES D. KNIPP and wife,** | ) |  |
| **LYNNE A. KNIPP,** | ) |  |
|  | ) |  |
| Defendants/Appellants. | ) |  |
|  | ) |  |

**FILED**

**February 23, 1999**

**Cecil Crowson, Jr.**
Appellate Court Clerk

_____

From the Chancery Court of Henderson County at Lexington.
**Honorable Joe C. Morris, Chancellor**

**W. Collins Bonds**, KIZER, BONDS & HUGHES, Milan, Tennessee
Attorney for Defendants/Appellants.

**Carthel L. Smith, Jr.**, Lexington, Tennessee
Attorney for Plaintiffs/Appellees.

OPINION FILED:

**REVERSED AND REMANDED**

**FARMER, J.**

**HIGHERS, J.**: (Concurs)
**LILLARD, J.**: (Concurs)

Defendants James D. Knipp and Lynne A. Knipp appeal the trial court's judgment finding that Plaintiffs/Appellees Clyde Bingham, Jr., and Betty Bingham had acquired a prescriptive easement to a field road on the Knipps' property. We reverse the trial court's judgment based on our conclusion that the record contains insufficient evidence to support the court's finding that the Binghams or their predecessors-in-title had acquired a prescriptive easement across the Knipps' property.

The parties own adjoining tracts of real property in Henderson County. The Knipps have owned their property since March 1978. In December 1993, the Binghams acquired their property from the Birdwell family, various members of whom apparently had owned the property since the 1940's. In the warranty deed executed by Eura Gay Birdwell's legal heirs, the grantors purported to convey to the Binghams an easement across the Knipps' property. The deed described the easement as one "for reasonable ingress and egress to this property which exists across the land of Knipp to reach the nearest public road known as Bucksnort Trail."

After acquiring his property, Clyde Bingham proceeded to access the property by using a field road which ran across the Knipps' property. The field road began at Bucksnort Trail and ended at the Knipps' corn field, which abutted the Binghams' own corn field. During much of the year, Clyde Bingham accessed his property by driving to the end of the field road and then proceeding through the Knipps' corn field to his own property. During crop season, however, the Knipps' corn crop covered the field road. When the crop was in, Clyde Bingham accessed his property by another route rather than driving through the Knipps' corn field.

Several years after the Binghams' purchase of the adjoining property, James Knipp discovered that Clyde Bingham was using the field road across his property. Through his attorney, Knipp asked Bingham to cease using the field road. This request prompted the Binghams to file the present lawsuit in which they sought to establish their right to a prescriptive easement across the Knipps' property along the field road.

At trial, the evidence showed that various tenants had farmed the Binghams' property over the years. At one time, the Binghams' property was part of a larger tract that included a

farmhouse. In 1963 or 1964, however, the construction of Interstate 40 effectively split the property into two sections, a northern section which contained the farmhouse and a southern section which included what is now Binghams' corn field. Prior to the construction, the Binghams' property could be accessed by the use of a public road to the north. The construction cut off access to this public road and apparently left the property landlocked. Accordingly, beginning in the early 1960's, the Birdwell family members and their tenants began to use the field road across the Knipps' property to access their property.

At various times over the subsequent years, the same person farmed both the Binghams' property and the Knipps' property. In the early 1970's, for example, James B. Woods, who then owned the Knipps' property, farmed both his own property and the Binghams' property. In 1973 or 1974, Woods sold his property to one of the Knipps' predecessors-in-title, but he continued to farm both properties until his death. Beginning in the late 1980's or early 1990's, and continuing until the time of trial, Donald Rush leased both tracts of land, and, prior to that, Anthony Williams farmed both properties. The tenant farmers used the field road to access both properties.

At the trial's conclusion, the trial court instructed counsel for each party to submit a short memorandum addressing the Binghams' right to either an easement of necessity or a prescriptive easement. The trial court subsequently found that the Binghams had "acquired an easement by prescription to the field road in question in this litigation," and the court entered a judgment accordingly. The Knipps have appealed, contending that the evidence preponderates against the trial court's finding that the Binghams had acquired an easement by prescription.

We begin our analysis with the well-established premise that the burden is on the party claiming a prescriptive easement to prove, by clear and convincing evidence, the facts necessary to establish such an easement. *McCammon v. Meredith*, 830 S.W.2d 577, 580 (Tenn. App. 1991); *Fite v. Gassaway*, 184 S.W.2d 564, 567 (Tenn. App. 1944). Specifically, the claimant must prove that his use and enjoyment of the alleged easement was "adverse, under claim of right, continuous, uninterrupted, open, visible, exclusive, and with knowledge and acquiescence of the owner of the servient tenement." *House v. Close*, 346 S.W.2d 445, 447 (Tenn. App. 1961). Moreover, the claimant must prove that his use and enjoyment of the alleged easement continued

for the full prescriptive period of twenty years. *Blakemore v. Matthews*, 285 S.W. 567, 567-68 (Tenn. 1926); *McCammon v. Meredith*, 830 S.W.2d at 580; *House v. Close*, 346 S.W.2d at 447-49; *see also Rogers v. City of Knoxville*, 289 S.W.2d 868, 871 (Tenn. App. 1955) (noting that illegal possession cannot ripen into vested legal right to easement short of twenty years adverse possession).

The proof in this case focused on the use of the alleged easement by the Binghams and their predecessors-in-title beginning in 1973 or 1974. The Binghams conceded that, at the time James B. Woods sold the Knipps' property in 1973 or 1974, the use of the alleged easement was not adverse. Immediately prior to the sale, Woods owned the Knipps' property, and he leased the Binghams' property as the tenant farmer of the Birdwells. Inasmuch as a party cannot use property adversely to his own interests, we agree that Woods' simultaneous ownership of the servient estate, the Knipps' property, and tenancy of the dominant estate, the Binghams' property, prevented the prescriptive period from running during Woods' use of the alleged easement. *See J.F. Gioia, Inc. v. Cardinal Am. Corp.*, 491 N.E.2d 325, 330 (Ohio Ct. App. 1985); *Sassman v. Collins*, 115 S.W. 337, 339 (Tex. Civ. App. 1908); *see also Bertolina v. Frates*, 57 P.2d 346, 349 (Utah 1936) ("As the books say: A man cannot prescribe against himself.").

Having conceded that the prescriptive period did not begin to run until 1973 or 1974, the Binghams focused on the use of the alleged easement from 1973 or 1974 forward, and they contended that such use had established an easement by prescription by the time they purchased their property in December 1993. We disagree.

As heretofore indicated, the party claiming a prescriptive easement has the burden of proving by clear and convincing evidence the facts necessary to establish such an easement. *Fite v. Gassaway*, 184 S.W.2d at 567; *McCammon v. Meredith*, 830 S.W.2d at 580. This burden requires the claimant to prove that the adverse use of the alleged easement by the claimant and his predecessors-in-title has continued uninterrupted for the full prescriptive period. *Blakemore v. Matthews*, 285 S.W. at 568; *McCammon v. Meredith*, 830 S.W.2d at 580; *House v. Close*, 346 S.W.2d at 447. In the present case, therefore, the Binghams were required to demonstrate that such use had continued uninterrupted for more than twenty years. *Blakemore v. Matthews*, 285 S.W. at 567; *House v. Close*, 346 S.W.2d at 449.

Contrary to the Binghams' argument, a prescriptive easement could not have arisen prior to their purchase of the property in December 1993 because, even if the use of the Knipps' property by the Birdwells and their various tenants otherwise met the requirements for obtaining a prescriptive easement,[1] the proof showed that the adverse use of the alleged easement had not continued uninterrupted for a full twenty-year period. As conceded by the Binghams, the prescriptive period could not have begun to run until after Woods' sale of the Knipps' property in 1973 or 1974. The proof failed to establish, however, in which of these two years the sale actually took place. This distinction is important because, if the Knipps' property was sold in 1973, the prescriptive period well might have run by the time the Binghams acquired their property in December 1993. On the other hand, if the Knipps' property was not sold until sometime in 1974, the prescriptive period would not have run by December 1993. The only evidence on this issue was introduced through Jerry Lynn Woods, the son of James B. Woods, who testified that "[w]e used to own [the Knipps' property] back in seventy – I guess we sold it in '74. In '73 or '74, we sold it."

We conclude that this testimony fails to constitute clear and convincing evidence that the twenty-year prescriptive period had run by the time the Binghams acquired their property in December 1993. Although it does not require as much certainty as the "beyond a reasonable doubt" standard, the "clear and convincing evidence" standard is more exacting than the "preponderance of the evidence" standard. *O'Daniel v. Messier*, 905 S.W.2d 182, 188 (Tenn. App. 1995); *Brandon v. Wright*, 838 S.W.2d 532, 536 (Tenn. App. 1992). In order to be clear and convincing, evidence must eliminate any serious or substantial doubt about the correctness of the conclusions to be drawn from the evidence. *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992); *O'Daniel v. Messier*, 905 S.W.2d at 188. Such evidence should produce in the fact-finder's mind a firm belief or conviction as to the truth of the allegations sought to be established. *O'Daniel v. Messier*, 905 S.W.2d at 188; *Wiltcher v. Bradley*, 708 S.W.2d 407, 411 (Tenn. App. 1985). In contrast to the preponderance of the evidence standard, clear and convincing evidence should demonstrate that the truth of the facts asserted is "highly probable" as opposed to merely "more

---

[1]Contrary to the Knipps' argument on appeal, we are not convinced that the prescriptive period was interrupted when, at various times throughout the years, the same tenant farmer happened to lease both the Binghams' property and the Knipps' property. *See Franz v. Mendonca*, 63 P. 361, 362 (Cal. 1900) (indicating that claimant's adverse use of alleged easement was not interrupted during two-year period in which tenant of dominant estate also was lessee of servient estate). For purposes of this appeal, however, we need not decide this issue.

probable" than not. ***Lettner v. Plummer***, 559 S.W.2d 785, 787 (Tenn. 1977); ***Goldsmith v. Roberts***, 622 S.W.2d 438, 441 (Tenn. App. 1981); ***Brandon v. Wright***, 838 S.W.2d at 536.

In the present case, Jerry Lynn Woods initially testified that he guessed the Woods sold the Knipps' property in 1974. He then testified that the property was sold in 1973 or 1974. Even if this testimony is accepted as true, the evidence demonstrates that both of the two possible conclusions to be drawn from the testimony -- (1) that the prescriptive period had not run by December 1993 and (2) that the prescriptive period had run -- are equally probable. Accordingly, such testimony cannot constitute clear and convincing evidence that the prescriptive period had run by December 1993.[2]

Because the full twenty-year prescriptive period had not run by the time the Binghams acquired their property, their claim for a prescriptive easement necessarily depended upon their continued adverse use of the property from the time they acquired it in December 1993 until the time of trial in September 1997. ***See Derryberry v. Ledford***, 506 S.W.2d 152, 156 (Tenn. App. 1973) (holding that, in establishing prescriptive period, party may "tack" his or her adverse possession onto that of predecessor-in-title); *accord Eckhardt v. Eckhardt*, 305 S.W.2d 346, 348 (Tenn. App. 1957); ***Star Enter. v. Warner***, No. 01A01-9502-CH-00036, 1995 WL 381652, at *5 (Tenn. App. June 28, 1995). Here again, however, we conclude that the Binghams' proof must fail, albeit for different reasons.

Where a landowner intervenes to occupy the land over which a claimed right-of-way is asserted, such as to result in an actual and substantial suspension of the claimant's adverse use of the right-of-way, such intervention by the landowner breaks the continuity of the claimant's use and prevents the prescriptive period from running. ***Ferrell v. Ferrell***, 60 Tenn. (1 Baxt.) 329, 336 (1872); *see also* 28A C.J.S. ***Easements*** § 24 (1996) (indicating that act by owner of servient estate which results in substantial interruption during period of adverse use is fatal to claim for prescriptive easement). The continuity of the claimant's adverse use of the alleged easement also is broken

---

[2]Inasmuch as this testimony fails to make one conclusion more probable than the other, we also are not convinced that this testimony even meets the preponderance of the evidence standard. ***Lettner v. Plummer***, 559 S.W.2d at 787; ***Goldsmith v. Roberts***, 622 S.W.2d at 441.

where the claimant's actions or statements demonstrate a recognition of the superior rights and ownership of the landowner. *See Garvin v. State*, 190 N.Y.S. 143, 149 (N.Y. Ct. Cl. 1921); *see also* 28A C.J.S. *Easements* § 29 (1996) (indicating that, where person using easement has, within prescriptive period, acknowledged superior right in other party, such admission is fatal to claim).

For example, where a landowner interrupts a claimant's adverse use of an alleged easement by plowing up the right-of-way and cultivating a crop over it, and where the claimant accedes to the landowner's right to do so, the claimant's use of the right-of-way ceases to be adverse, thus destroying the continuity of such use and precluding the acquisition of a prescriptive easement. *See Garvin v. State*, 190 N.Y.S. at 148-49; *Bales v. Rafferty*, 170 S.W. 1184, 1184 (Ky. 1914); *Graham v. Thompson*, 129 S.E. 272, 273 (Va. 1925); *see also Martin v. Martin*, 1 S.E.2d 46, 46-47 (Ga. Ct. App. 1939); *Waterman v. Moody*, 103 A. 325, 330 (Vt. 1918); 28A C.J.S. *Easements* § 42 (1996) (indicating that interruption of continuity occurs where land over which right-of-way is claimed is plowed up and cultivated by owner or his tenant); *cf. Tucker v. Hall*, 1986 WL 7853, at *3 (Tenn. App. July 15, 1986) (wherein prescriptive easement already had been acquired when landowner plowed up and row-cropped field road). The claimant's recognition of the landowner's superior rights may be manifested by such actions as asking the landowner's permission to cut the crop so that the claimant might continue using the right-of-way through the field, changing the path of the right-of-way so as to circumvent the field, or ceasing use of the right-of-way altogether. *Garvin v. State*, 190 N.Y.S. at 148-49; *Graham v. Thompson*, 129 S.E.2d at 273; *Bales v. Rafferty*, 170 S.W. at 1184.

In the present case, Clyde Bingham's own testimony revealed his tacit recognition of the Knipps' superior rights and ownership to the field road. The undisputed evidence showed that the field was planted with corn virtually every year since the Knipps' acquisition of their property in 1978. Although Clyde Bingham routinely used the field road to access his property, he testified that he did not use the road during crop season when it was planted with corn:

> Q.  This access road, does it come into the area where your corn field is and stop or does it extend out past the field in any way?
>
> A.  Well, the field -- The fields have always been tended

and, you know, take up the road during the summertime when the crops are in.

. . . .

Q.     . . . You would agree that right now there is no road on this field road that goes to your land right now. It's all covered by corn crop; isn't it?

A.     He [James Knipp] puts it in crop.

. . . .

Q.     So during crop season, you really don't have access to your property through the field road?

A.     I don't go through it during the crop season.

Q.     You don't go out there?

A.     I go out there, but I don't drive down through the corn field.

In accordance with the foregoing authorities, we conclude that the Binghams' adverse use of the field road was interrupted when the Knipps planted the road with a corn crop each year and the Binghams acknowledged their right to do so by refraining from driving through the field until after the crop was harvested. *See also Frank C. Schilling Co. v. Detry*, 233 N.W. 635, 638 (Wis. 1930) (holding that claimants' adverse use of alleged easement was substantially and materially interrupted when landowner constructed restaurant across easement and, during restaurant's two-year existence, claimants, without protest, diverted their route around west end of restaurant and over railway right-of-way in order to access public street); *cf. Deregibus v. Silberman Furniture Co.*, 186 A. 553, 554 (Conn. 1936) (holding that claimant's adverse use of alleged easement was not interrupted by tenant's tethering of horses to east wall of passageway or by landowner's deposit of building materials along wall). Under these circumstances, the continuity of the Binghams' use of the field road was destroyed and they did not acquire a prescriptive easement over the road.

Having held that the Binghams did not establish their right to a prescriptive easement over the field road on the Knipps' property, we also have considered whether the Binghams' proof established their right to an easement of necessity across the property. The parties' pleadings and proof raised this issue, but the trial court did not reach the merits of this issue because it concluded

that the Binghams had acquired a prescriptive easement.

At trial, the Binghams presented evidence that the field road on the Knipps' property was their only means of accessing their property. In the early 1960's, the newly-constructed interstate cut off the property's access to a public road to the north of the property. The Knipps sought to show that the Binghams could access their property from an alternate road to the east, Oak Trail, but the evidence showed that the Binghams' property did not actually abut Oak Trail and that, in order to access their property from this road, the Binghams would have to drive through a portion of Natchez Trace State Park.

Despite this evidence, we conclude that the Binghams' proof fails to establish their entitlement to an easement of necessity across the Knipps' property. In order to establish the existence of an easement of necessity, the claimant must demonstrate, among other requirements, that the dominant estate and the servient estate were at one time owned by a common grantor. *Bowles v. Chapman*, 175 S.W.2d 313, 314 (Tenn. 1943); *accord City of Whitwell v. White*, 529 S.W.2d 228, 231 (Tenn. App. 1974). The law requires a unity of title because easements of necessity "are founded on conveyances and are premised upon the presumption that they were within the contemplation of the parties." *Cole v. Dych*, 535 S.W.2d 315, 318 (Tenn. 1976). An easement of necessity does not arise unless "it is of such necessity that it must be presumed to have been within the [parties'] contemplation." *LaRue v. Greene County Bank*, 166 S.W.2d 1044, 1049 (Tenn. 1942); *accord Lively v. Noe*, 460 S.W.2d 852, 854 (Tenn. App. 1970). Absent a unity of title, no conveyance exists from which the grant or reservation of an easement of necessity can be inferred. *Bowles v. Chapman*, 175 S.W.2d at 314.

The record in this case contains no evidence that the Binghams' property and the Knipps' property were once owned by the same grantor. Inasmuch as the evidence fails to demonstrate that the requirement of unity of title has been met, the Binghams' claim for an easement of necessity also must fail.

Although our holding appears to leave the Binghams without access to their property, we note that a property owner whose land is cut off from a public road by the intervening land of

another has a statutory right to condemn an easement across his neighbor's land. ***See Huddleston v. Hoy***, No. 01A01-9006-CH-00201, 1990 WL 186347 (Tenn. App. Nov. 30, 1990); T.C.A. § 54-14-102 (1998). This statutory right exists even if the parties cannot trace their respective titles to a common grantor because the statute relaxes the common-law requirement of unity of title. ***Boone v. Frazor***, 1988 WL 77542, at *5 (Tenn. App. July 27, 1988). The property owner seeking such relief, however, must file a petition meeting certain requirements, such as setting forth a full description of the property sought for the right-of-way, as well as giving a bond for costs. ***Id.***; T.C.A. § 54-14-103 (1998). The property owner also must pay damages to his neighbor to compensate him for the value of the property taken and any incidental damages. ***See*** T.C.A. §§ 54-14-104, -108, -109 (1998).

In sum, we hold that the Binghams' proof fails to support the conclusion that they have acquired an easement across the Knipps' property, whether by right of prescription or way of necessity. Accordingly, the trial court's judgment is reversed, and this cause is remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed to the Binghams, for which execution may issue if necessary.

_____
FARMER, J.

_____
HIGHERS, J. (Concurs)

_____
LILLARD, J. (Concurs)