## HILMAN M. VANG AND ANOTHER v. HELEN M. MOUNT AND OTHERS.

220 N. W. 2d 498.

July 19, 1974—No. 44498.

*Grose, Von Holtum, Von Holtum, Sieben & Schmidt,* and *Paul L. Pond,* for appellants.

*Brown & Bins* and *Richard H. Bins,* for respondents.

Heard before Peterson, Todd, and Scott, JJ., and considered and decided by the court.

PETERSON, JUSTICE.

Plaintiffs, Hilman M. Vang and Genevieve S. Vang, own land in Olmsted County subject to a mineral rights reservation in favor of prior owners. Having received an offer to purchase the land, plaintiffs brought the present action to obtain a declaratory judgment that sand, gravel, and limestone were not subject to the reservation. After several named and unnamed defendants answered, plaintiffs moved for summary judgment. The trial

court granted the motion and entered a judgment holding that limestone was not included within the reserved mineral rights.

In appealing from the judgment, the answering defendants, Helen M. Mount and Earl, Floyd, and Everett Rea, have raised several contentions. Their major argument is that the language of the reservation was ambiguous so that the parties' intent must be determined and questions of fact resolved. For this reason, they argue, summary judgment was inappropriate. Finding that there are genuine issues of fact, we agree and hold that the trial court erred in granting plaintiffs' motion for summary judgment under the circumstances of this case.

The land subject to the mineral rights reservation in question is situated in Olmsted County and bears the following legal description: South One-half of the South One-half, Section Thirty Six, Township One Hundred Six, Range Fourteen West. Prior to May 1945 defendants Helen M. Mount and George W. Smith owned the land as joint tenants. On May 7, 1945, they conveyed the land by warranty deed to Leo and Dorothy Biel, subject to the following reservation:

"Reserving all minerals in and under said land and use of sufficient surface of said land to drill and mine for and take away for use said, gas, oil, or other minerals thereon or under to the parties of the first part."

The mineral rights reservation was repeated in a series of intermediate conveyances, and on December 15, 1960, plaintiffs obtained title to the land in question. Their deed likewise contained the reservation of mineral rights.

After plaintiffs received an offer to purchase the property contingent upon a determination that the mineral rights reservation did not include sand, gravel, and limestone, plaintiffs instituted the present action. Helen Mount and Everett, Floyd, and Earl Rea, the heirs of George W. Smith, were the only defendants to answer.

Before the motion for summary judgment was heard, various affidavits were submitted on behalf of plaintiffs and defendants.

John Holmquist, a professional geologist, stated in an affidavit that on bases of his studies of the Minnesota State Geological Survey relating to the land in question, he found a definite likelihood of limestone which would be commercially valuable for use as a base material for highway and road construction, for the production of commercial cement, and for the production of agricultural lime. He added that the actual value of the limestone could not be determined without fairly costly test borings.

On the other hand, the affidavit submitted by plaintiff Hilman Vang noted that the entire area, except for swamp, had been tilled during his ownership; that there were no outcroppings of rock; and that he had taken no limestone from the property. A soil evaluation by the Soil Conservation Service, attached to this affidavit, concluded that there was "only a limited amount of area as a potential source of gravel," in addition to "some limited areas of limestone bedrock which may be a source of rock for crushing." An affidavit submitted by Kenneth McGhie, an engineer, further noted that because of the prevalence of limestone in the area, its possible utilization "is dictated by the extent of soil cover and distance of outcrop from good roads."

Affidavits of defendant Earl Rea, and of Lloyd Quarve, the prospective purchaser, were also presented to the trial court. Rea's affidavit stated his belief that the limestone involved had commercial value and noted that Quarve had discussed a price of 10 cents per ton for the limestone on the property. In his affidavit, Quarve confirmed his interest in purchasing the property if the mineral rights reservation excluded sand, gravel, and limestone. Quarve also stated that his immediate intention was "to purchase the land for farm purposes with a long range view toward possibly use of any sand, gravel and limestone on the property for road building purposes."

At the hearing on the motion for summary judgment, defendant Helen Mount was permitted to answer several questions orally to supplement her affidavit. In the affidavit, Mrs. Mount had said that her intention was to create the broadest possible

reservation of mineral rights; that she was aware of several limestone quarrying operations in the vicinity at the time the deed was prepared; and that the reason for the broad language of the reservation "was that I knew or presumed that there was or might be limestone, shale, iron ore or similar minerals which could be recovered only by the open pit quarry method of mining." At the hearing, she added that she obtained the language for the reservation from mineral reservations used by a local cement company in its land leases. Over plaintiffs' objections, Mrs. Mount was also allowed to testify that she meant to reserve limestone and shale with the language used.

In granting summary judgment for plaintiffs, the trial court ruled only that the mineral reservation did not include limestone. For the purpose of this appeal, it has been stipulated that limestone is the only substance at issue under the mineral rights reservation.[1]

In considering the propriety of the trial court's granting summary judgment, we note at the outset certain principles of construing exceptions and reservations long recognized by this court. The general rule of resolving ambiguity in a deed in favor of the grantee is not applied. Rather, where exceptions and reservations are in question, "the proper method is to determine the intention of the parties from the entire instrument and the facts and circumstances surrounding the making of the deed." Resler v. Rogers, 272 Minn. 502, 507, 139 N. W. 2d 379, 383 (1965). In Carlson v. Minnesota Land & Colonization Co. 113 Minn. 361,

---

[1] We note that the legislature has recently adopted legislation recognizing mineral interests owned separately from the surface as a distinct entity for purposes of real estate taxation, Minn. St. 272.039; imposing taxes thereon, §§ 272.04 and 273.13, subd. 2a; requiring filing of mineral interests, § 93.52; and providing for forfeiture to the state for failure to file, § 93.55. Interests owned on or before December 31, 1973, must be filed before January 1, 1975, to avoid forfeiture. § 93.55. As plaintiffs note, no real estate taxes have yet been assessed or paid on the alleged mineral rights in this case.

362, 129 N. W. 768, 769 (1911), the court amplified on this concept in the following terms:

"* * * The intention of the parties is to be ascertained from the entire instrument, including the reservation or exception. This includes the ordinary meaning of the words, recitals, context, subject-matter, the object or purpose of introducing the exception or reservation clause, the nature of the reservation or exception, and the attending facts and circumstances surrounding the parties at the time of the making of the deed. It is also elementary that the reservation or exception is void, when totally repugnant to the granting clause. When the grant is direct and positive, it cannot be set aside by an indirect method in the form of an exception or reservation."

While the precise question whether limestone can be a mineral within a reservation of mineral rights has not been before this court before, in Resler v. Rogers, *supra,* the court did discuss a somewhat similar issue. Resler was a declaratory judgment action to determine the meaning and application of the phrase "also excepting mineral reservations" in a deed. The action was brought against the holders of the purported mineral rights after sand, gravel, and clay had been removed from the land and sold by the fee owners. The court held that the "excepting mineral reservations" phrase failed to create a reservation of mineral rights. Nevertheless, the court proceeded to discuss whether sand and gravel of the quality removed would be minerals within a reservation of mineral rights.

The Resler court first quoted the following definitions of "minerals" (272 Minn. 507, 139 N. W. 2d 383):

"While the word 'minerals' includes, in a technical sense, all natural inorganic substances forming a part of the soil, the term is used in so many senses, dependent upon the context, that such a definition obviously is too broad as being impractical of application in any particular case. On the other hand, to confine the definition of such word to precious minerals, for example, would

limit its application in such manner as would at once destroy a large part of the value of an exception of minerals in a grant of land. Accordingly, a number of authorities prefer to define a 'mineral' as any natural substance having sufficient value to be mined, quarried, or extracted for its own sake or its own specific use. 36 Am. Jur. 283, Mines and Minerals, § 4."

The court then discussed a number of cases from other jurisdictions considering whether substances such as sand, gravel, shale or granite could be minerals within a reservation. The court ended by stating "that the trial court correctly concluded in the instant case that sand and gravel, in such quality as were removed from the premises referred to herein, were not minerals within the commonly understood meaning of that phrase in a reservation of mineral rights in this jurisdiction." 272 Minn. 509, 139 N. W. 2d 384.

Although plaintiffs rely on Resler as supporting their position that limestone is not a mineral within a similar reservation, the statements in Resler on sand and gravel are no more than dicta. We face the question presented by this case as one of first impression. Furthermore, if any precedential value is to be attributed to Resler, its emphasis on the quality of the sand and gravel removed seems to make the question into one of the facts of the particular case.

As our opinion in Resler implicitly recognized, the word "mineral" is not a term susceptible of one precise, all-encompassing definition. It may also not be possible to categorize a particular substance as being or not being a mineral under all circumstances. "It has been repeatedly held by the courts that the term 'minerals' in a grant or reservation has no general definition, and that in determining what is included in 'minerals' as used in a conveyance, the term must be construed in the light of the particular transaction and with reference to the instrument and its context." Annotation, 95 A. L. R. 2d 843, 845.[2]

---

[2] In discussing whether such materials as sand, clay, and gravel are to be considered minerals, the author of the Annotation, 95 A. L. R. 2d

Similarly, the cases which have considered whether limestone should be labeled a mineral are not uniform in their results. For example, in Coastal Petroleum Co. v. Secretary of the Army, 315 F. Supp. 845 (S. D. Fla. 1970), limestone underlying a lake was considered a mineral within a mineral lease, and in Dunbar Lime Co. v. Utah-Idaho Sugar Co. 17 F. 2d 351 (8 Cir. 1926), limestone was held to be a mineral for purposes of certain public land laws. On the other hand, in Eldridge v. Edmondson, 252 S. W. 2d 605 (Tex. Civ. App. 1952), the owner of a mineral royalty on the land in question brought suit to recover a royalty for limestone removed from the land. After examining the evidence on the value and potential profitable uses of the limestone involved, the court held that "limestone used only for building purposes or as a building material is not classed as a mineral under a reservation in a deed * * *." 252 S. W. 2d 607. In support of its decision, the court added that the fact that the limestone could be removed only by the open pit method, destroying the surface, was a factor to be given some weight.

---

843, also noted the exceptions that may swallow any general rule in attempting to classify such materials (95 A. L. R. 2d 846): "* * * [M]ost of the cases have stated the principle that the term 'minerals,' as used in real-property instruments, includes clay, sand, or gravel, unless a contrary intention or an ambiguity is manifested by the language of the instrument as a whole. There are, however, important considerations which cause exceptions to this general rule. Among them are that materials which possess no exceptional characteristics or value which distinguish them from the surrounding soil are not likely to be recognized as 'minerals' in the sense of such conveyances; that materials which form part of the surface are also not legally recognizable as minerals, nor are those which cannot be obtained without a destruction of the surface, in the absence of extremely clear indication that they are to be so recognized and that the usual considerations of avoiding damage to the surface estate are to be deliberately disregarded; and that in determining whether or not a substance is to be considered to be a 'mineral' conveyed or reserved, the surrounding circumstances of local custom and usage are to be observed, thus in many cases restricting any broad interpretation of the general rule that all mineral substances below the surface are 'minerals.' "

As the divergent results in classifying a particular substance as a mineral suggest, "mineral" is an ambiguous term and questions of fact regarding the intent of the parties and the surrounding circumstances are usually involved in determining whether a given substance is a mineral within a reservation. Some of the better reasoned cases specifically articulate such an approach. See, e. g., United States v. 1,253.14 Acres of Land, 455 F. 2d 1177 (10 Cir. 1972); Fleming Foundation v. Texaco, 337 S. W. 2d 846 (Tex. Civ. App. 1960). As the court in the latter case stated, "[w]e think the question whether a given substance is or is not a mineral within the meaning of the deeds in which the reservations are made is a question of fact to be decided according to the circumstances of the particular case." 337 S. W. 2d 851.

In the instant case, there are several areas which should be illuminated by an evidentiary hearing. The affidavits do not readily admit of a single conclusion as to the potential value of the limestone in question. As the authorities discussed indicate, evidence of value, in terms of the profitability of mining and marketing, has a definite bearing on whether the limestone here should be recognized as a mineral. Although self-serving testimony regarding the unexpressed subjective intentions of the grantor cannot be admitted, other evidence bearing on the intent of the parties might be received. The effect that limestone extraction might have on the surface is another fact issue left unresolved by the summary judgment. Evidence on it, and on any other relevant surrounding circumstances of local custom or usage as well, might help to shed light on the issues involved.

Because questions as to the value of the limestone, the effect of extraction on the surface, and the intentions of the parties do remain, we conclude that there were genuine issues of material fact contraindicating summary judgment. See, Rule 56.03, Rules of Civil Procedure.[3] Where the language of a writing is

---

[3] The relevant standard on rendering summary judgment established by Rule 56.03 provides: "Judgment shall be rendered forthwith if the

ambiguous, "resort may be had to extrinsic evidence, and construction then becomes a question of fact unless such evidence is conclusive." Donnay v. Boulware, 275 Minn. 37, 44, 144 N. W. 2d 711, 716 (1966). Since the language of the reservation was ambiguous and the character of the limestone was a question of fact, summary judgment was not appropriate, even though the likelihood of defendants' prevailing upon trial may not be overwhelming. See, Donnay v. Boulware, *supra*; Whisler v. Findeisen, 280 Minn. 454, 160 N. W. 2d 153 (1968).

Reversed and remanded.

---

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law."