CITY OF WHITWELL and Hazel Henderson, Complainants-Appellees,

v.

Arley WHITE, Defendant-Appellant.

Court of Appeals of Tennessee, Middle Section.

Oct. 25, 1974.

Certiorari Denied by Supreme Court June 2, 1975.

Geary P. Dillon, Jr., Whitwell, for complainants-appellees.

Billy Joe White, Tazewell, for defendant-appellant.

## OPINION

TODD, Judge.

This suit was filed by the complainants, City of Whitwell and Hazel Henderson to prohibit defendant, Arley White, from obstructing a certain right of way claimed by defendant as his exclusive property. Defendant denied all allegations supporting the right of way and by cross action sought

removal of city water lines from the disputed right of way.

After hearing on oral evidence, the Chancellor found:

a. That the City of Whitwell had failed to establish any right of way as a public road.

b. That any right of removal of water lines was barred by the statute of limitations.

c. "That the complainant . . . has established that she and her predecessors in title have established a private easement or roadway of ingress and egress . . . by prescription. . ."

By the Chancellor's decree a 15-foot right of way from Ike Pickett Lane to Teague Road was declared to be a private way for ingress and egress in favor of complainant's real estate described in the decree; and defendant was enjoined from interfering with the use of said way.

Since the claims of the City of Whitwell were rejected and the City has not appealed, it is not deemed to be a party to this appeal which concerns only the claims of complainant, Hazel Henderson.

The defendant has appealed and assigned the following errors:

"1. The Chancellor erred in holding that Complainant Henderson had right-of-way pursuant to oral agreement between Defendant and Henderson's predecessor in title.

"2. The Chancellor erred in holding that there was enough evidence to establish a prescriptive right when the record is totally void of any use under claim of right or use adverse to Defendant. The Court further erred when he sustained objections when Defendant counsel asked about adverse claims of right and holding it was not a necessary element.

"3. The Chancellor erred in signing Decree establishing a fifteen (15) foot right-of-way when evidence showed a much narrower lane and which would result in a further taking of Defendant's property.

"4. The Chancellor erred in holding that right-of-way was way of necessity without empannelling jury of view to set out most convenient right-of-way to all parties by metes and bounds."

In support of the first assignment of error, appellant cites *Menefee v. Davidson County*, 195 Tenn. 547, 260 S.W.2d 383 (1953), wherein Menefee resisted the effort of Davidson County to remove his quarry equipment from County property, but admitted that he was occupying county property permissively, rather than adversely. He conceded that he could not hold adversely to the county in its governmental capacity, but insisted that the county held the property in a proprietary rather than governmental capacity. In rejecting the defense of Menefee, the Supreme Court cited *Connor v. Frierson*, 98 Tenn. 183, 38 S.W. 1031 (1897) and *Fite v. Gassaway*, 27 Tenn. App. 692, 184 S.W.2d 564 (1944), in both which cases the litigants were private individuals as in the present appeal. The cited authorities support the proposition that an enforceable permanent easement may not be conferred orally, and that an easement by prescription may not be obtained where the use is permissive.

Therefore, the first assignment of error is well-grounded to the extent that the action of the Chancellor cannot be sustained upon the theory of oral permission to the predecessor of complainant-appellee.

For the same reason, the second assignment of error is well-grounded to the extent that the action of the Chancellor cannot be affirmed based upon alleged adverse or hostile use which was, in fact, permissive.

Nevertheless, as suggested by the Chancellor, the actual use of the right-of-way by appellee and her predecessors, whether permissive or not, constitutes circumstantial evidence of a right of easement of an en-

tirely different origin; i. e., the prior situation and title of the entire tract of land, especially that the lands of appellee and appellant were at one time under a common ownership and that appellee's predecessor received title under circumstances creating a "way of necessity."

The fourth assignment of error complains that the Chancellor decreed an "easement of necessity" without following the procedure set out in T.C.A. §§ 54–1901 to 54–1917. Section § 54–1901 provides as follows:

"*54–1901. Way of ingress and egress— Procedure for securing—Payment of damages—Maintenance as private road.*—When the lands of any person shall be surrounded or inclosed by the lands of any other person or persons who refuse to allow to such person a private road to pass to or from his said lands, it shall be the duty of the county court, on petition of any person whose land is so surrounded, to appoint a jury of view, who shall, on oath, view the premises, and lay off and mark a road through the land of such person or persons refusing, as aforesaid, in such manner as to do the least possible injury to such persons, and report the same to the next court, which court shall have power to grant an order to said petitioner to open such road, not exceeding fifteen (15) feet wide, and keep the same in repair; and, if any person shall thereafter shut up or obstruct said road, he shall be liable to all the penalties to which any person is liable, by law, for obstructing public roads. The damage adjudged by the jury shall, in all cases, be paid by the person applying for such order, together with the costs of summoning and impaneling said jury. Gates may be erected on said roads. [Acts 1868–1869, ch. 14, § 1; Shan., § 1634; Code 1932, § 2745.]"

Appellant cites *Bowles v. Chapman*, 180 Tenn. 321, 175 S.W.2d 313 (1943). However, in said opinion, the Supreme Court held:

"The proof showed that complainant, his neighbors, and predecessors in title had used a roadway north through defendants' land for more than fifty years; that the land north of complainant was mostly in timber; that when holes would form in the road complainant would travel around these rough places. The proof further showed that a hard-surfaced road was on the south side of complainant's land, and that the road used by complainant over defendants' land was one of convenience in going to said pike road to the north and in going to church.

"(1–3) The complainant insists that the road was one of necessity. However, the complainant cannot successfully claim a way of necessity, because *it is not shown that his land and the land of the defendants were at one time owned by a common grantor*, or that the immediate grantor of the dominant tract was at the time of the litigation the owner of the servient estate."

180 Tenn. p. 323, 175 S.W.2d p. 313 (Emphasis Supplied)

Contrary to the facts of *Bowles v. Chapman*, supra, the evidence in the present case is abundantly clear that the land of appellant and that of appellee were formerly a part of a single tract and that the tract now owned by appellee was separated from that of appellant under circumstances which created a way of necessity. The evidence in this regard is found principally in the testimony of appellant, himself.

According to maps in the record, the appellant, Arley White, owns a tract which fronts 482 feet on the northerly side of Teague Road and runs back an unnamed distance to the property of appellee which adjoins it on the north (rear), and does not front on any public road. The property of a Mr. Pickett lies between the property of appellee and the next road, which is Sweetwater Road. A private road, called Pickett Road, has been used by permission of Mr. Pickett to reach appellee's house from Sweetwater Road, but no right of use of said road is shown.

The testimony of appellant, referred to above, is as follows:

"Q. All right, would you point out to the Court the general boundaries of your property, what it is bounded by and general boundaries of it.

A. It's bound on the south by the Teague Road, on the east by Williams, on the north, this section by Henderson.

Q. Of course, you have marked on that Tom White, that's the party that owned it prior to Mrs. Henderson.

A. That's the part that sold to Henderson,

.    .    .    .    .

Q. All right, and after you purchased it you sold to Tom White, a part as illustrated here.

A. Yes, I sold him four (4) acres more or less and *beginning over here coming down to the John White land with the John White Lane* a hundred and twenty-five (125) feet from stake in the east bank of the lane back to Williams and Williams back to the beginning point.

.    .    .    .    .

Q. What did you sell to Tom White in relation to the lane?

A. I just sold to, the Tom White property to what is known as *the John White Lane with the John White Lane* to an iron stake at the bank, which is the east bank if the stake is still there.

Q. All right, did you and Mr. Tom White have any type of agreement concerning this lane?

.    .    .    .    .

"A. That I would not sell him or give him any written rights to the lane, because it would give me trouble up by my house, but he had always used my land any way he wanted to, went across it any time he wanted to, and if he wanted to come up that lane it was alright, up or down it. And I'd let him use it by permission, but I wouldn't make him a deed, I wouldn't sell it to him or give it to him on account it would give me trouble maybe sometime later." (Emphasis Supplied)

Thus, it is apparent that appellant owned the combined properties now held by himself and appellee; that appellant sold to one Tom White the property now held by appellee which was the rear portion of the tract not fronting on any public road; and that appellee is the successor in title of said Tom White.

Under these circumstances, a way of necessity was created when appellant sold a land-locked section of his property to Tom White, predecessor in title of appellee.

In *Pearne v. Creek Mining & Mfg. Co.,* 90 Tenn. 619, 18 S.W. 402 (1891), it was held that a deed by a private person of land surrounded by other land of the grantor and strangers passes to the grantee a right of way over the surface of the grantor's adjoining land.

In *McMillan v. McKee,* 129 Tenn. 39, 164 S.W. 1197 (1914), it was held that where a way of necessity has not been selected, the owner of the servient estate has a prior right to select the way, provided it be reasonable; but the route is to be determined by the reasonable convenience of both parties, and not by the sole interest of either. According to said authority, the route should be such as the grantor would reasonably select.

In 28 C.J.S. Easements § 35–54 on the pages indicated, are found the following pertinent statements:

". . . wherever one conveys property he also conveys whatever is necessary for its beneficial use and enjoyment, and retains whatever is necessary for the use of the land retained. The implication of an easement by necessity is based upon the inferred intent of the parties, which is to be determined from the terms of the instrument and the circumstances surrounding the transaction; . . . p. 696

.    .    .    .    .

"The rules as to the acquisition of a private road by the exercise of the power of eminent domain, or as to the acquisition of a way by prescription, or as to the implication of an easement from the use made of the premises by the common grantor, have no application to the implication of ways of necessity. The rule requiring that an easement be apparent and continuous as a requisite to a grant or reservation thereof by implication does not apply to a way of necessity." p. 697

.    .    .    .    .

"When there is a conveyance of a tract of land and there is no means of access thereto or egress therefrom except over the remaining land of the grantor, a way of necessity over such land is ordinarily granted by implication of law. . . ." p. 699

.    .    .    .    .

"On a conveyance which leaves the land conveyed or retained surrounded by the land of the grantor or grantee and third persons, a way of necessity is implied in favor of the landlocked parcel." p. 700

.    .    .    .    .

"Where the owner of a tract of land lays it out in streets and lots delineated on a map or plan and sells lots bounded by such streets, the legal effect of the grants is to convey to the grantees easements of way with respect to the streets as laid out. . . ." p. 701

". . . a right to a way so created cannot be defeated by showing that the owners have another convenient and accessible way of going to and from their premises." 28 C.J.S., p. 719

In 25 Am.Jur.2d, Easements and Licenses, § 34, pp. 447, 448, is found the following:

"A way of necessity is an easement founded on an implied grant or implied reservation. It arises where there is a conveyance of a part of a tract of land of such nature and extent that either the part conveyed or the part retained is shut off from access to a road to the outer world by the land from which it is severed or by this land and the land of stranger. In such a situation there is an implied grant of a way across the grantor's remaining land to the part conveyed, or conversely, an implied reservation of a way to the grantor's remaining land across the portion of the land conveyed. The order in which two parcels of land are conveyed makes no difference in determining whether there is a right of way by necessity appurtenant to either.

"A way of necessity results from the application of the presumption that whenever a party conveys property he conveys whatever is necessary for the beneficial use of that property and retains whatever is necessary for the beneficial use of land he still possesses. Such a way is of common-law origin, and is presumed to have been intended by the parties. A way of necessity is also said to be supported by the rule of public policy that lands should not be rendered unfit for occupancy or successful cultivation." 25 Am.Jur.2d, pp. 447, 448

Thus it appears conclusively, as a matter of law, that, when appellant, Arley White, sold to his uncle, Tom White, a landlocked portion of his (Arley White's) land, there was implied and created a right of ingress and egress over the land of Arley White. Unknowingly, the parties to that transaction honored this rule by the oral easement. They were not aware that the rights created by the sale and confirmed by their oral agreement would pass to the successors in title of Tom White; but appellee, as Tom White's successor, retains the right acquired by him when he purchased the land.

Arley White honestly thought, and now contends that the right of passage orally granted to his uncle might be denied to others and withdrawn by him at will. Such is not the case. The right attached to the land conveyed to Tom White and inures to his successors.

Appellant relies upon the fact that there is another, more convenient outlet available to appellee. The "John White Lane," mentioned in the deed from Arley White to Tom White extended along the westerly margin of the Arley White land from Teague Road to the rear boundary of the Arley White land. It did not extend to the next public road, Sweetwater Road; however, another private road, "Pickett Road," extended from Sweetwater Road to the vicinity of the end of the John White Lane. Indeed, there is evidence that at one time the two private roads were joined, graded, gravelled, and used as a detour route from Teague Road to Sweetwater Road. This arrangement was temporary and discontinued many years ago.

■ When appellant first closed the John White Lane by felling trees near Teague Road, appellee was able to travel on John White Lane to Pickett Road and thence to the public way. Subsequently, appellant obstructed the remainder of John White Lane so that appellee could not travel over it to Pickett Road, at which time Mr. Pickett permitted appellee to cross his property otherwise to Sweetwater Road. These accommodations by Mr. Pickett in allowing the use of his private road, or other ways across his property, being temporary and not arising to the dignity of an enforceable right, cannot defeat the rights of appellee derived from her predecessor, Tom White.

This controversy actually arose under circumstances which explain the position taken by appellant. When appellee, Mrs. Henderson, purchased the Tom White land, the original Tom White residence was located thereon and she occupied it until she decided to build a new house. She requested that appellant permit her to improve the John White Lane from Teague Road to her home, and there was discussion of terms which were not agreed upon. Mr. Arley White felt he was justified in preventing the passage of heavy material trucks and other vehicles incident to the construction of a new house, and he did so.

■ This aspect of the situation suggests an interesting question of law which need not be answered here, namely, the extent of an implied way of necessity where the grantee subdivides the land or otherwise increases the number of beneficiaries of the way. The present record reflects that the new house was to be a substitute for the old house, and that Mrs. Henderson would occupy and use it in lieu of the old house. Thus her right to the continued use of the way of necessity cannot be questioned on this ground.

The remaining assignment for consideration is the third, which complains of the width of the easement decreed by the Chancellor. It is insisted that there is no evidence to sustain the grant of a 15-foot easement. This measurement doubtless is derived from the statute, quoted supra, which is not directly pertinent.

■ Appellant points out that the testimony of width ranges from "quite narrow" to "10 or 12 feet." Evidence as to the width of the way actually used is not controlling as to the width which the appellee and her predecessors had a right to use under the principles of law above quoted. The extent of a way of necessity is limited only by the reasonable needs in contemplation of the parties at the time of the deed from which the way resulted. The rights of appellee do not limit the full use of the affected land, except that appellee's way may not be obstructed. In this view of the matter, it cannot be said that the 15-foot width is unreasonable.

One other aspect of the case requires brief recognition. Although not discussed in briefs, there is room for the argument that the allegations of the complaint are not broad enough to include the grounds of the relief granted; i. e., a way of necessity.

■ If the facts had not been so fully developed at the trial, and if such facts did not so conclusively appear from the testimony of appellant, himself, this Court might be inclined to a result which would require

the parties to re-plead and re-litigate their dispute. Since, under the incontrovertible facts, the rights of the parties are clearly delineated by the law, it is deemed more just and equitable to establish such rights in the present appeal than to invoke a technicality which would not change the ultimate result but which would impose unnecessary and unjust expense and litigation upon the parties.

■ The right to a way of necessity implies the right to maintain a passable way. It also implies the use of such way in such manner as to avoid unnecessary inconvenience to the owner of the subservient estate. For these and kindred reasons, the cause will be remanded to the Chancellor for enforcement and, if necessary, specific definition of the rights and obligations of the parties.

The decree of the Chancellor is affirmed. The costs of this appeal are taxed against appellant and his sureties. The cause is remanded for enforcement of the decree and for any necessary and appropriate proceedings.

Affirmed and remanded.

SHRIVER and DROWOTA, JJ., concur.