Louis BODE, Appellant,

v.

Myron BODE, et al., Defendants
and Third-Party Plaintiffs,
Respondents,

v.

Lynn BODE, Third-Party
Defendant, Appellant.

No. C7–92–714.

Court of Appeals of Minnesota.

Dec. 29, 1992.

Robert M. Halvorson, Gislason, Dosland, Hunter, & Malecki, New Ulm, for appellants.

Bailey W. Blethen, Blethen, Gage & Krause, Mankato, for defendants and third-party plaintiffs, respondents.

Considered and decided by NORTON, P.J., and KALITOWSKI and HARTEN, JJ.

## OPINION

NORTON, Judge.

### FACTS

Ted Bode (Ted) owned a quarter section of farmland near Nicollet, Minnesota. In 1943, he sold 13 acres of this land to each of his brothers, Hilbert Bode (Hilbert) and Louis Bode (Louis). (See Figure 1.) Because Louis' tract had no access to any public road and was bounded on the north and east by the land of strangers, he drove his farm equipment across Ted's land to reach his tract. Louis usually took the shortest available route across the northern edge of Ted's property, but he sometimes took other paths across Ted's property. A field approach road was built at the northwest corner of Ted's land to provide access to both Hilbert's and Louis' fields. Beginning in 1970, Louis' son Lynn Bode (Lynn) rented Louis' tract and the northern half or so of Ted's tract. During this time, Lynn took a myriad of routes to reach Louis' tract and apparently treated all of the property as one parcel.

**Figure 1**

In 1988, Hilbert sold his tract to Myron and Joanne Bode (sometimes collectively referred to as Myron). The following year, Ted died and his tract of land passed to his heirs, Karen and James Rieland (collectively referred to as Karen). Karen offered Louis a two rod written easement on the north edge of the former Ted property. Louis refused the offer. Shortly thereafter, Karen and James sold their land to Myron and Joanne, who now owned the entirety of Ted's original land with the exception of Louis' landlocked tract. Included in the contract for deed was a clause in the encumbrance disclaimer section which provided for an easement for Louis, the location of which was to be determined by Myron.

In 1990, Myron offered Louis an easement across the north two rods of the Hilbert tract and to grade and maintain the new route. Arguing that this new path would still have drainage and other problems, Louis refused this agreement. When Lynn persisted in using the old route, Myron had him arrested for trespassing, and Lynn suffered $3500 in damages when he was unable to reach his crops. While trying to evade Myron's barriers, Lynn caused Myron damages of $300.

Louis brought this suit to establish an easement along his preferred route. While the matter was in litigation, Karen and Myron modified their contract for deed to eliminate the mention of Louis' easement.

After a bench trial, the trial court granted Louis an easement across the north two rods of the Hilbert tract, provided that Myron would make the new path passable for Louis' farm equipment. Louis appeals and demands an easement along the old route.

## ISSUE

Did the trial court have the equitable power to locate an easement by necessity at a location preferred by the servient estate where there was evidence suggesting a lack of agreement as to a definite present location?

## ANALYSIS

■ This is a classic case of an "easement by necessity." Under long-established common law, when a landowner conveys a portion of land that has no access to a public road, the owner of the purchased portion has a right of access across the retained lands of the grantor unless the conveying document explicitly disclaims

any right of access. 3 Richard R. Powell, *The Law of Real Property* ¶ 407 (1992) (hereafter *Powell*); *see Pine Tree Lumber Co. v. McKinley*, 83 Minn. 419, 420, 86 N.W. 414, 415 (1901).[1] The grant of this easement is implied in the grant of the parcel, and no further writing is needed to make it effective. *Story v. Hefner*, 540 P.2d 562, 566 (Okla.1975) (original grant satisfies statute of frauds).

All parties agree that Louis received an easement by necessity in 1943 from Ted. Myron now claims that because Louis refused to accept reasonable formal written easement offers to provide alternate access, the old easement was no longer "necessary."

 An easement by necessity lasts only as long as the necessity. *Dallas v. Farrington*, 490 So.2d 265, 271 (La.1986); *Niedfeldt v. Evans*, 272 Wis. 362, 75 N.W.2d 307, 308 (1956). Necessity ceases when the owner of the dominant estate acquires a permanent legal right to public access to the estate. *Id.* 75 N.W.2d at 308–09 (easement terminates when new public road borders dominant estate); *Fox Invs. v. Thomas*, 431 So.2d 1021 (Fla.Ct.App.1983) (dominant estate owner acquires adjacent property that borders public way); *Joines v. Herman*, 89 N.C.App. 507, 366 S.E.2d 606 (1988) (dominant estate owner acquires easement across neighbor's land); *see also City of Whitwell v. White*, 529 S.W.2d 228 (Tenn.Ct.App.1974) (easement does not terminate when dominant estate owner has revocable license to cross neighbor's land). *But see Taylor v. Hays*, 551 So.2d 906 (Miss.1989) (necessity vanishes when reasonable alternate access is offered by neighbor).

 Louis' easement did not terminate when he was offered other access. Because he refused the offers of alternate access, he never gained the legal right to use those alternate routes. Therefore, his original rights, whatever they were in 1943, are still intact. In addition, the rule and result are supported by public policy. If easements could be terminated by a mere offer of other access, the dominant estate owner would be forced to run the risk of losing *all* access to the property if a court eventually decided that the alternate access was reasonable. The dominant estate owner should not be forced to run this risk.

 While there is no Minnesota law concerning the location of an easement by necessity, the law from other states is uniform and is deeply rooted in English common law. *See Clark v. Cogge*, 79 Eng.Rep. 149 (C.P. 1609). An easement by necessity is unique in that it has no definite location at the time it is created. Even when there is an existing roadway, that fact alone does not require the easement to be located there. *Stair v. Miller*, 52 Md.App. 108, 447 A.2d 109, 110 (1982). Instead, the key is whether the parties to the conveyance agree, explicitly or implicitly, that a particular route will be the location of the easement. *Hines v. Hamburger*, 14 A.D. 577, 43 N.Y.S. 977, 978–79 (1897) (agreement is implied if the usage is over a long time, in this case 35 years); *Douglas v. Jordan*, 232 Mich. 283, 205 N.W. 52, 54 (1925) (acquiescent use of bridge for 20 years established permanent right to use that bridge); *Grobe v. Ottmers*, 224 S.W.2d 487, 489 (Tex.Civ. App.1949) (15 years of continuous use established right to use particular road). Once such a route is agreed upon, the courts are without power to move the easement. *Stair*, 447 A.2d at 110.

 Where there is no agreement, the location of the easement is established in this manner:

When no prior use of the way has been made, and the same is to be located for the first time, the owner of the land over which the same is to pass has the right to choose it, provided he does so in a reasonable manner, having due regard to the rights and interests of the owner of the dominant estate. But, if the owner of the land fail to select such way when

**1.** Recently in dicta, this court has used the terms "easements by necessity" interchangeably with "easements by implication." *Compare Nunnelee v. Schuna*, 431 N.W.2d 144, 148 (Minn.App.1988) and *Kleis v. Johnson*, 354 N.W.2d 609, 611 (Minn.App.1984) *with Olson v. Mullen*, 244 Minn. 31, 40–41, 68 N.W.2d 640, 647 (1955).

requested, the party who has the right thereto may select a suitable route for the same, having due regard to the convenience of the owner of the servient estate.

*McMillan v. McKee,* 129 Tenn. 39, 164 S.W. 1197, 1198 (Tenn.1914); *accord Ritchey v. Welsh,* 149 Ind. 214, 48 N.E. 1031, 1033 (Ind.1898); *Oliver v. Ernul,* 277 N.C. 591, 178 S.E.2d 393 (1971).

▮ The trial court made no finding concerning whether the parties or their predecessors had ever agreed upon any route, but a close examination of the record suggests that there was no agreement. In 1989, Louis refused an offer to locate the easement almost precisely in the place he is now demanding. In 1990, he refused an offer that put the easement in a new place, but which required Myron to grade and maintain the new road, responsibilities not normally imposed upon a servient estate owner. *Reed v. Board of Park Comm'rs of Winona,* 100 Minn. 167, 172, 110 N.W. 1119, 1120–21 (1907) (owner of dominant estate is responsible for maintenance of easement). Louis used his demanded route more than any other during the years 1943 to 1970, but he did use other routes during this time without objection from Ted. From 1970 to 1988, when much of Ted's land was rented by Lynn, the principal route used was far to the south of the demanded route. In short, Louis had several opportunities to agree concerning the location of the easement, but he did not do so. Nor did he prove an agreement by acquiescence.

▮ In the absence of agreement, the *McMillan* rule permits Myron, the owner of the servient estate, to choose a reasonable route. The route he chose, along the northern edge of the Hilbert parcel, is evidenced by his 1980 offer of that route. That the route was reasonable is supported by the trial court's findings. Myron will be able to make better use of his own land, the new route is not any less convenient for Louis, and the physical contact between the parties will be reduced thereby easing high tensions.[2]

▮ Louis argues that the contract for deed signed by Karen and Myron granted him a fixed easement on the former Ted parcel. When the critical language in a conveyance is a reservation or exception to the grant, the construction of that language depends on an examination of the "intention of the parties from the entire instrument and the facts and circumstances surrounding the making of the deed." *Vang v. Mount,* 300 Minn. 393, 396, 220 N.W.2d 498, 500 (1974) (citations omitted). Careful scrutiny demonstrates that the contract did not grant Louis an easement. Instead, the language suggests that the parties to the contract intended only to note a possible prior encumbrance and did not intend to create a new one. *See Powell* at ¶ 407. The "grant" appears in the section of the contract which lists present liens and encumbrances, and the phrasing—"the location of which to be determined by the Purchaser"—implies that Myron was merely relieving Karen of her attempts to legitimate Louis' easements and was taking the responsibility upon himself.

▮ Even if the contract could be construed to grant an easement, the later modification of the contract was sufficient to eliminate the grant. In *Lehman v. Stout,* 261 Minn. 384, 112 N.W.2d 640 (1961), a married couple orally promised to take care of their sick uncle, and in return, the uncle would pay wages to the couple and convey a quarter-section of his farm to their son. Later, a written contract was drawn which gave the farm directly to the couple in exchange for care and left the son completely out of the agreement. The supreme court held that because the transaction was not yet completed (the couple had not yet provided a lifetime of services to the uncle), the contract could be modified or rescinded. Further, because the third-party beneficiary son had no obligations under the contract, he could not vest his

---

**2.** Under the common law, an easement by necessity must be located on the retained land of the grantor and nowhere else. *Ritchey,* 48 N.E. at 1033. The rationale for this is unclear, particularly where (as here) a successor of the grantor happens to own more convenient land equally well-suited for the easement. *Cf. Taylor,* 551 So.2d at 909–10. We need not resolve this point as it was not raised below or in the briefs.

rights and the parties to the contract could modify at will. *See also Emkee v. Ahston,* 139 Minn. 443, 166 N.W. 1079 (1918) (similar facts); *Block v. Litchy,* 428 N.W.2d 850 (Minn.App.1988) (contract for land may not be modified by agreement after purchaser has fulfilled terms). In the present case, because Myron still had several years of payment remaining on the contract for deed, the parties to the contract had the power to change its terms to eliminate any grant of an easement.

## DECISION

The trial court acted properly in locating the easement by necessity in a location preferred by the owner of the servient estate.

Affirmed.

KALITOWSKI, Judge (concurring specially).

I concur in the result arrived at by the majority. However my affirmance of the trial court is limited to the unique facts of this case. Appellant in 1989 refused an offer of the very easement he now seeks; in 1990 he refused an offer of the feasible and practical alternative easement eventually adopted by the trial court. Under these facts it was not error for the trial court to exercise its equitable powers and establish the location of an easement by necessity.