RENDERED:  MARCH 27, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0538-MR


JERRY CAMPBELL AND MARY CAMPBELL         APPELLANTS


|       | APPEAL FROM LAUREL CIRCUIT COURT |
|-------|----------------------------------|
| v.    | HONORABLE GREGORY A. LAY, JUDGE |
|       | ACTION NO. 20-CI-00671 |


MARY DAVIS; SUSAN MITCHELL; AND TIMMY MITCHELL         APPELLEES

AND

NO. 2025-CA-0591-MR


MARY DAVIS; SUSAN MITCHELL; AND TIMMY MITCHELL         CROSS-APPELLANTS


|       | CROSS-APPEAL FROM LAUREL CIRCUIT COURT |
|-------|----------------------------------------|
| v.    | HONORABLE GREGORY A. LAY, JUDGE |
|       | ACTION NO. 20-CI-00671 |


JERRY CAMPBELL AND MARY CAMPBELL         CROSS-APPELLEES

<u>OPINION</u>
<u>AFFIRMING</u>

** ** ** ** **

BEFORE: CALDWELL, COMBS, AND EASTON, JUDGES.

COMBS, JUDGE: Jerry Campbell (Campbell) and Mary Campbell, his wife, appeal from the April 7, 2025, findings of fact, conclusions of law, and judgment of the Laurel Circuit Court affixing the location of an easement by necessity on his real property in favor of Appellees, Mary Davis, Susan Mitchell, and Timmy Mitchell (Davis and Mitchell or Appellees). Appellees have filed a cross-appeal arguing that as a matter of law, the court erred in failing to grant them title in fee simple to the disputed passway by (1) misadvising the jury on adverse possession and (2) by relocating the easement by necessity from its pre-existing location. After our review, we affirm.

At issue is a disputed passway crossing Campbell's southern tract to a landlocked northern tract owned by Davis and Mitchell. Davis and Mitchell claim a right to the disputed passway in fee simple by virtue of their deeds, the deeds of their predecessors-in-interest, or by adverse possession -- or alternatively, by means of an easement by necessity. Campbell disputed that Davis and Mitchell had any claim to the disputed passway. However, he agreed that they were entitled to an easement by necessity to be set at a location of his choosing.

-2-

The properties were initially part of a parent tract owned by G.W. Britton. The parent tract was bordered on the north by Robinson Creek and on the south by Robinson Creek Road, a public thoroughfare. In 1935, although not recorded until 1953, Britton deeded for consideration the southern tract, consisting of approximately six acres, to Mark Lanham, thereby landlocking his retained northern tract. Perhaps in recognition that the northern tract lacked adequate access, in an unrecorded deed[1] dated August 1936, Mark Lanham deeded back to Britton (for consideration) a fifteen-foot strip bisecting the middle of the tract, the disputed passway. The cover page of the deed described the conveyance as a fifteen-foot right-of-way, but Davis and Mitchell asserted that their predecessor-in-interest had added that language and that the conveyance was made in fee simple. The authenticity of the unrecorded deed was contested.

Subsequent conveyances of the southern tract were made by recorded deeds dated as follows: in 1976, a one-acre square along the southwest boundary of the southern tract was gifted by Mark Lanham to the Hugheses; in 1997, the remaining five acres were gifted by Mark Lanham to David Lanham and his wife Mary Hanson; and in 2009, both tracts were deeded for consideration to Campbell.

---

[1] Davis and Mitchell did record the deed in 2020, but by Order dated October 25, 2023, the circuit court ordered that it be stricken from the Laurel County Clerk's Office on the ground that it did not contain an adequate source of title pursuant to Kentucky Revised Statutes (KRS) 382.110. Thus, the deed was presented as unrecorded to the jury.

None of the deeds referenced the off-conveyance of the fifteen-foot strip, and Campbell denies having knowledge of a roadway across the property. After his purchase of the southern tract, Campbell built a driveway approximately upon the disputed passway -- although it terminates prior to the boundary for the northern tract. He constructed a house near the east side of his driveway.

The northern fifteen-acre tract was conveyed by recorded deeds for consideration dated as follows: in 1936, from Britton to John Champlin; in 1938, from Britton to Fred York; and in 1946, from Fred York to Max York, who died in 2011. Appellees Mary Davis and Susan Mitchell inherited the northern tract upon the death of their mother, Lucy York, in 2020. Davis and Mitchell assert that each of these deeds includes the disputed passway. The description of the southern boundary of the northern tract is identified in each as beginning at Lanham corner, then east with the wire fence to "the gap," then south to the county road, then fifteen feet east to a persimmon tree at the county road, then north "to gap" and line between two maples, and then, finally, east to Lanham corner. The northern tract has always remained undeveloped woodland.

Tensions rose among the parties in 2010 when Davis and Mitchell allege that Campbell wrongfully excluded them from the disputed passway by placing a locked gate on it. Campbell countered that he purchased the property by General Warranty Deed with no easement or passway reserved in Davis's and

-4-

Mitchell's favor. Davis and Mitchell assert that Campbell was well aware of their rights to the passway and that he chose to build his driveway on that location at his peril. They claimed that their family had used the disputed passway regularly for more than 40 years to reach their property for recreational purposes and to log it for their personal use as well as to sell the timber.

The matter proceeded to a jury trial in May 2024.[2] The circuit court subsequently entered an interlocutory judgment consistent with the jury's findings: against Davis and Mitchell on their claims of ownership of the fifteen-foot passway either by fee simple or by adverse possession. However, the jury found that Davis and Mitchell had proven that they were entitled to an easement by necessity for ingress and egress to the northern tract.

The circuit court then examined the property personally before entering his findings of fact, conclusions of law, and a judgment determining the location of the easement by necessity. Appellees insisted that the appropriate location for any easement by necessity was the disputed passway; *i.e.*, Campbell's driveway. But they proposed that an alternate roadway could be constructed to the west of -- and

---

[2] Appellees purport to cross-appeal from the September 26, 2023, Order denying their motion for summary judgment. An order denying a motion for summary judgment is not appealable. *See Transp. Cabinet v. Leneave*, 751 S.W.2d 36, 38 (Ky. App. 1988) ("[O]nce the trial begins, the underlying purpose of the summary judgment expires and all matters of fact and law procedurally merge into the trial phase, subject to in-trial motions for directed verdict or dismissal and post-judgment motions for new trial and/or judgment notwithstanding the verdict."). However, we have considered Appellees' arguments as part of their cross-appeal of the final judgment.

running parallel with -- the disputed passway. Citing his desire for privacy, Campbell proposed that the easement by necessity be located at the far west of his property line.

By order entered April 7, 2025, the circuit court adopted the alternate Option "B" as proposed by Davis and Mitchell, reasoning as follows:

> construction of a roadway easement in this location does not unduly restrict Campbell's use of his property since he already has a roadway cutting through the middle of his property, being his driveway, that the roadway would afford Campbell some of the privacy he seeks, and that it would be affordable and reasonable[.]

The circuit court rejected Campbell's proposed location as unreasonable, stating:

> that it is clearly in a difficult location for construction of a roadway easement, [that it] would be extremely costly, and [that it] would, in fact, use more of [Campbell's] property for an access easement than the alternate roadway easement proposed by Davis and Mitchell.

Davis and Mitchell had asserted that Campbell's proposed location would require construction of a road "going through a drainage area with deep gullies, up a hill, and through a heavily wooded area." Campbell does not dispute that the cost of such a roadway would approach $60,000 while construction of Option B would cost approximately $20,000.

Campbell now appeals and challenges the circuit court's rejection of his superior right to determine the location for the easement by necessity. Davis and Mitchell cross-appeal, arguing: (1) that they own the disputed passway (*i.e.*,

-6-

the current driveway on the Campbell property and beyond to their property line) in fee by virtue of their deeds; (2) that the circuit court's jury instruction on adverse possession was erroneous; and (3) that it was reversible error for the court to relocate the easement by necessity from its pre-existing location. But they also argue that if this Court disagrees, alternatively, they contend that we should affirm the circuit court's placement of the easement rather than Campbell's proposed location.

We review the circuit court's findings of fact for clear error, and we review questions of law *de novo* without deference to the circuit court's legal conclusions. *Ellington v. Becraft*, 534 S.W.3d 785, 790 (Ky. 2017). We begin with Davis's and Mitchell's claims.

Davis and Mitchell first assert that they own the disputed passway by simple application of Kentucky's race-notice rule[3] and that the circuit court erred as matter of law in failing to award them the property.[4] Crucial to this argument is

---

[3] Kentucky recording statutes, KRS 382.270 and 382.280, provide that no deed conveying real property is valid against a purchaser for valuable consideration without notice thereof and that a deed takes effect at the time it is filed for recording. These statutes, known as the "race-notice" rule, provide that a prior interest in real property takes priority over a subsequent interest that was taken with notice, actual or constructive, of the prior interest. *Mortg. Elec. Registration Sys., Inc. v. Roberts*, 366 S.W.3d 405, 407-08 (Ky. 2012).

[4] The parties debate whether this issue was properly preserved. We believe that it was by Davis's and Mitchell's alternate proposed jury instructions seeking to have a judgment entered in their favor following the jury's determination that the unrecorded deed was not a forgery.

Davis's and Mitchell's presumption that the disputed road conveyed in those recorded deeds was within the grantor's power to give. However, we conclude that the deeds are ambiguous.

"It is elementary that a deed can only convey title to land actually owned by grantor and the grantee takes no greater title under a deed than the grantor had." *York v. Perkins*, 269 S.W.2d 242, 243 (Ky. 1954). The cover page of the unrecorded deed (the claimed source for Davis's and Mitchell's title) identifies the **acknowledgement** of a fifteen-foot right-of-way, but the subsequent **recorded deeds** purport to convey the land in **fee simple** -- a superior claim of title. This discrepancy creates an ambiguity, and "[o]nce an ambiguity is found, 'areas of dispute concerning the extrinsic evidence are factual issues . . . subject to resolution by the fact-finder.'" *Vorherr v. Coldiron*, 525 S.W.3d 532, 544 (Ky. App. 2017) (quoting *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. App. 2002)).

Davis and Mitchell introduced evidence that their predecessor-in-interest had "written in" the reference to the right-of-way on the unrecorded deed, and they argued that the original intent was for a conveyance in fee simple of a fifteen-foot strip of land that bisected the southern tract approximately down the middle. However, because of the ambiguity just discussed, the circuit court was entitled to find otherwise. Thus, we cannot say that the circuit court erred as a

matter of law in failing to grant Davis and Mitchell the disputed passway in fee simple as it clearly was its prerogative to find otherwise.

Davis and Mitchell next challenge the circuit court's jury instructions on adverse possession, which provided:

> [t]he term "adverse possession" as used in this Instruction means the visible exercise of exclusive authority and control of the disputed property under claim of ownership as against all others; it requires such open demonstration of physical occupancy or intended use as would bring it to the attention of an ordinarily prudent owner, inquirer, or intending purchaser, *however, the* paying of taxes or *occasional entries for the purpose of cultivating or cutting timber, hunting or fishing, or other recreational uses*, or other temporary uses, do not in themselves constitute adverse possession.

Davis and Mitchell take issue with the italicized language and its reference to the occasional recreational use of the land. In crafting the proposed instruction, counsel for Campbell cited KRS 411.190, captioned, "obligations of owner to persons using land for recreation," and *Moore v. Stills*, 307 S.W.3d 71 (Ky. 2010), as authority. Davis and Mitchell argue that neither the statute nor *Moore* is applicable because these authorities are intended to protect landowners who permit the public on occasion to use their land for recreational purposes. Davis and Mitchell, however, used the disputed passway **primarily** to access their own landlocked property -- regardless of any incidental use for recreational activities and the occasional cutting of timber.

-9-

Campbell disagrees that the instruction was erroneous. He contends that KRS 411.190 is appliable by its plain language (that "[n]o action for [adverse possession] may be brought by any person whose claim is based on use solely for recreational purposes") in reference to the testimony of Mary Davis that she and her family had used the passway to cross the Campbell property "for recreational purposes."

Kentucky has adopted the bare-bones approach to jury instructions. *Norton Healthcare, Inc. v. Disselkamp*, 600 S.W.3d 696, 723 (Ky. 2020). Accordingly, trial courts endeavor to craft jury instructions that:

> provide only the bare minimum necessary to ensure that the jury understands the ultimate issue of fact to be decided in any case, but still provide enough law and background knowledge so that the jury comes to a decision that is supported by law.
>
> Merely failing to adhere to the bare-bones approach, however, is generally not enough to justify a new trial under our jurisprudence. When a Kentucky appellate court is confronted with a challenge to a jury instruction based on the content of the instruction, the appellate court must consider whether the instruction misstated the law by failing to sufficiently advise the jury what it had to believe from the evidence in order to return a verdict in favor of the party who had the burden of proof. If the appellate court finds that the challenged jury instruction did misstate the law, a presumption of prejudice arises and the challenging party is entitled to a new trial unless the responding party is able to show affirmatively that the error did not affect the verdict. In contrast, if the appellate court finds that the jury instructions did not misstate the law, no presumption of

-10-

> prejudice arises and the complaining party is only entitled to a new trial if she is able affirmatively to show prejudice, meaning that the error affected the verdict.

*Id.* at 723-24 (internal quotation marks, footnotes, and alteration marks omitted).

"[T]he substantive content of the jury instructions [is] reviewed *de novo*." *Sargent v. Shaffer*, 467 S.W.3d 198, 204 (Ky. 2015), *overruled on other grounds by Univ. Med. Ctr., Inc. v. Shwab*, 628 S.W.3d 112 (Ky. 2021).

Applying this standard, we must first consider whether the inclusion of the references to occasional recreational use constitutes a misstatement of the law. Although the parties both assert that this is an issue resolved by KRS 411.190, we do not agree. As the Supreme Court explained in *Moore*, 307 S.W.3d at 81, the relevant portion of the statute is the clarification and codification of the well settled rule of law that the mere incidental use of another's property will not give rise to adverse possession. Accordingly, regardless of KRS 411.190, the general common law properly did apply, and the instruction did not misstate the law. There was no error -- much less reversible -- on this point.

We turn now to Davis's and Mitchell's claim that the court erred as a matter of law in failing to set the easement by necessity that was awarded by the jury upon the disputed passway. Davis and Mitchell argue that where a roadway over the servient estate has already been established and has been in use by the owner of the dominant estate, that must be the location or placement of the

-11-

easement by necessity. *Carroll v. Carroll*, 355 S.W.3d 463 (Ky. App. 2011); *Bowling v. Smith*, No. 2016-CA-000727-MR, 2018 WL 480528 (Ky. App. Jan. 19, 2018) (unpublished);[5] and *Bode v. Bode*, 494 N.W.2d 301 (Minn. Ct. App. 1992).

We agree with Campbell that neither *Carroll* nor *Bowling* has any relevance to the question of whether the location of an easement by necessity is fixed by the historic use of a dominant estate.

*Bode* alone is somewhat relevant. At issue in *Bode* was claimant's dissatisfaction with not being awarded his preferred route across the servient estate. 494 N.W.2d at 304. However, regardless of the reasoning of our sister state in *Bode,* Kentucky law has squarely addressed the legal question now before us. In *Daniel v. Clarkson*, 338 S.W.2d 691, 692-93 (Ky. 1960), our predecessor Court instructed that when there is unsatisfactory evidence of a definite location of the easement, the servient owner has the initial right to fix a reasonable route; in cases where the parties cannot agree, the location may be set by the circuit court.

Whether there was a definite and ascertainable pre-existing passway was a highly contested issue of fact, and neither the jury nor the circuit court made the crucial finding that a definite path existed. Indeed, although Davis and

---

[5] Under Kentucky Rules of Appellate Procedure (RAP) 41, citations to opinions "Not to Be Published" are disfavored. They are permitted to be cited as persuasive but not binding authority when a point of law has not been adequately addressed by any published opinions rendered after January 1, 2003.

Mitchell have argued that one path has been shown by: (1) the surveys made by Grande, their expert; (2) Hubbard, whom Campbell retained prior to these proceedings; (3) an aerial photo of the two tracts. However, we are not persuaded due to evidence to the contrary challenging the accuracy of that argument.

Both the Hubbard survey and the aerial photo clearly show a pathway veering to the right, whereas the disputed passway as plotted by Grande was a straight diagonal. Additionally, contrary to their testimony that the disputed passway was navigable by car and a small lawnmower only ten years before the survey, Grande stated that past Campbell's driveway, the disputed passway was not passable due to a thick grove of trees and deep ruts more than 30 years of age. Therefore, the location was inadequate, and the parties could not agree. Pursuant to the clear precedent of *Daniel*, *supra*, the court properly proceeded to set the location of the easement.

Campbell contends the circuit court erred in rejecting his superior right to set the location. An easement by necessity is a type of easement by implication and "is based primarily on the policy favoring beneficial use of property." *Gosney v. Glenn*, 163 S.W.3d 894, 900 (Ky. App. 2005). An easement by necessity not specifically located by deed may be relocated with the express or implied consent of the owners of both estates -- dominant and servient. *Wells v. Sanor*, 151 S.W.3d 819, 823 (Ky. 2004). To reiterate, our Supreme Court has held

-13-

that in addition to this doctrine of mutual consent, "in cases where the parties cannot agree the location may **be determined by the court**." *Daniel*, 338 S.W.2d at 693 (emphasis added).

Finally, the law provides that even when a location is set, the owner of the servient estate may "unilaterally modify or alter the location of a roadway easement so long as it does not change the beginning and ending points and does not result in a material inconvenience to the rights of the dominant estate." *Wells*, 151 S.W.3d at 823; *see also Stewart v. Compton*, 549 S.W.2d 832, 833 (Ky. App. 1977); *Terry v. Boston*, 54 S.W.2d 909 (Ky. 1932). Campbell claims that he is permitted to unliterally determine the location of the easement under the authority of *Daniel*, *Stewart*, and *Terry*, *supra*.

However, it is undisputed that his proposed location would constitute a material inconvenience to the dominant estate, requiring a significantly more onerous and expensive construction. It also would require that a greater portion of Campbell's *own* property be used for the passway; the difference in length between Appellees' proposed Option "B," and Campbell's proposed Option "C" is about 100 feet.

In adopting location "B," the court carefully weighed and considered the interests of the parties, including Campbell's privacy interest. Additionally, its action was wholly consistent with Kentucky law.

Consequently, we affirm the judgment of the Laurel Circuit Court.


ALL CONCUR.


BRIEFS FOR
APPELLANTS/CROSS-
APPELLEES:

Scott M. Webster
London, Kentucky

BRIEFS FOR APPELLEES/CROSS-
APPELLANTS:

Marcia A. Smith
Corbin, Kentucky